WARNER, J.
After a jury determined that the automobile accident was not a legal cause of injury to the plaintiff, the trial court granted a motion for new trial. The court concluded that while evidence of permanency of the plaintiffs injury was hotly contested, all the evidence showed at least *1155 some injury. The defendant appeals, claiming that the trial court abused its discretion in granting the motion, because there was some evidence that the plaintiff suffered no injury at all. We cannot conclude that the trial court abused its discretion. Thus, we affirm.
This case arises out of a “fender-bender” automobile accident in 2002. The plaintiff, Sharon Ferris, was rear-ended by the defendant at a stoplight. Ferris described a “hard” hit causing her neck to hit the headrest. The defendant called it more of a tap. The only damage to Ferris’ vehicle were two small holes in her bumper caused by the screws on the defendant’s front license plate. Both drivers pulled to the side, exchanged information, and went on their way. When the defendant asked if Ferris were injured, she told him she was “fine.” Ferris, however, testified that she developed stiffness and soreness in her neck during the day. The defendant called the next day to see how she was, and she told him she “seemed okay.” She did not miss any work as a result of the accident.
Ferris did not seek medical treatment right away. As her neck continued to feel stiff and sore, with pain going down her arms, she eventually went to her primary physician about thirty days after the accident. Her physician referred her to an orthopedic physician, who in turn referred her to a pain specialist. She was prescribed anti-inflammatory drugs and muscle relaxants, but she discontinued treatment with them because she “just wasn’t that into taking the drugs.” She also saw a chiropractor for approximately two-and-a-half years after the accident for palliative care. She filed suit for damages in 2006. She saw the chiropractor again in 2008. At trial, she claimed that she had discontinued seeing the chiropractor in 2005 for financial reasons. Yet she testified at trial that during 2006 to 2008 she charged $2,000 to her credit cards for dental treatment.
In her testimony at trial, Ferris admitted that prior to the accident she suffered from psoriatic arthritis, for which she would occasionally need a cortisone shot to be able to lift her shoulder. She also admitted having prior neck problems which required visits to the doctor.[1] In addition, the week before the accident she experienced pain in her mid back region, causing her to visit her physician. At that time she was taking a prescription dose of Ibuprofen of 800 milligrams, and she also had a prescription for hydrocodone, a narcotic. She admitted that she had frequently received Ibuprofen prescriptions for other conditions dating back to 1997. However, she maintained that none of these conditions caused any restriction in her activities, as did her condition after the accident. Ferris’ daughter also testified at trial that her mother began having headaches and soreness after the accident which limited her activities.
Ferris testified that her activities were limited, including speed walking, which she enjoyed prior to the accident. She explained speed walking to the jury. However, on cross-examination, counsel brought out that in her answers to interrogatories she had not listed that as an activity that she had engaged in prior to the accident that she was unable to perform now.
Her medical records and prescription records were admitted into evidence. Her physician’s notes from the visit the week *1156 prior to the accident show that she complained of sharp pains in the mid back. The prescription drug records showed a lengthy history of medications of all types, including the prescription strength Ibuprofen and hydrocodone. Also admitted into evidence was a record of a 2006 visit to an orthopedist as a result of bilateral knee pain. In that record, she denied any prior history of knee pain. Yet in the records of her primary care physician is a record of a visit due to knee pain in 2002. On a second visit she complained of injuring her shoulder in a fall. However, in none of those records is any complaint made of neck pain.
Her main treating chiropractor testified at trial that Ferris had suffered a permanent impairment to her neck as a result of the accident. MRI films of Ferris’ neck showed a bulging disc at one level and a herniated disc at another, although the chiropractor did not review the films herself. In contrast to her chiropractor, the orthopedic physician Ferris was referred to by her primary physician looked at the MRI films and did not see any herniation, although he did observe a bulging disc. The chiropractor revealed that Ferris had not told her about the sharp pain she felt in her back the week prior to the accident, nor did she tell her about her prescription medications. This history may have made a difference in the chiropractor’s opinion, depending upon the part of the body involved.
The defense sought an examination by another orthopedic surgeon. That doctor testified that he found no permanent injury. He reviewed the medical films and found no herniated discs. The disc bulging was consistent with normal wear and tear associated with Ferris’ age and not an injury. He did conclude, however, that she had suffered a neck strain in the accident. Typically such injuries would be treated with anti-inflammatories and four to six weeks of physical therapy.
Prior to trial, the defendant had admitted liability for causing the accident. Therefore, the entire trial focused on the permanency of Ferris’ injuries. Because she did not present any evidence of any future medical expenses, the court directed a verdict as to future expenses. Ferris was allowed to argue that she should be entitled to future pain and suffering damages. In closing argument, defense counsel admitted that Ferris had suffered the minor neck sprain as testified to by the defense doctor, just not the permanent injury claimed by Ferris.
The jury returned a verdict finding that the accident was not a legal cause of injury to Ferris. Plaintiff moved for a new trial, and the court granted the motion. In its order the court stated:
Plaintiff seeks a new trial asserting that the verdict is against the manifest weight of the evidence. In support of this assertion, Plaintiff notes that the undisputed testimony of the witnesses, expert and lay, established that the Plaintiff had suffered some injury. The Court agrees.
While permanency of any injury was very much a disputed fact, the evidence at trial established at the very least that the Plaintiff suffered a neck sprain as a result of the accident. Under such circumstances, the failure to find any loss or damage as a result of the Defendant’s negligence is against the manifest weight of the evidence. See, e.g., The Hertz Corporation v. Gleason, 874 So.2d 1217 (Fla. 4th DCA 2004).
The defendant appeals the order granting a new trial.
A trial judge has broad discretion in ruling on a motion for a new trial on the grounds that the verdict is contrary to the manifest weight of the evidence. Brown v. *1157 Estate of Stuckey, 749 So.2d 490, 497 (Fla. 1999). When so ruling, the trial court must consider all of the evidence and weigh the credibility of the witnesses. The supreme court described the duty of the trial court:
A trial judge has the responsibility to draw “on his [or her] talents, his [or her] knowledge, and his [or her] experience to keep the search for the truth in a proper channel,” and the trial judge should always grant a motion for a new trial when “the jury has been deceived as to the force and credibility of the evidence or has been influenced by considerations outside the record.” Cloud, 110 So.2d at 673. The trial judge’s discretion permits the grant of a new trial although it is not “clear, obvious, and indisputable that the jury was wrong.” When a trial judge grants the motion for a new trial, he or she must articulate the reasons for the new trial in the order.
749 So.2d at 497 (emphasis supplied).
On appeal the trial court is afforded a deferential standard of review. Brown explains:
When reviewing the order granting a new trial, an appellate court must recognize the broad discretionary authority of the trial judge and apply the reasonableness test to determine whether the trial judge committed an abuse of discretion. If an appellate court determines that reasonable persons could differ as to the propriety of the action taken by the trial court, there can be no finding of an abuse of discretion. The fact that there may be substantial, competent evidence in the record to support the jury verdict does not necessarily demonstrate that the trial judge abused his or her discretion.
749 So.2d at 497-98 (emphasis supplied). The trial judge’s discretion permits the grant of a new trial even if it is not clear, obvious and indisputable that the jury was wrong. Id. at 497.
Despite this deferential standard, some courts have held that a trial court may abuse its discretion by granting a new trial where the articulated reasons set forth in the order have no basis in the record or are based on incorrect conclusions of law. See Schmidt v. Van, 65 So.3d 1105 (Fla. 1st DCA 2011). For instance, in Jordan v. Brown, 855 So.2d 231 (Fla. 1st DCA 2003), the trial court granted a new trial where the jury found that the admitted accident was not a legal cause of injury to the plaintiff, and the court reasoned that the evidence was “undisputed” that the plaintiff suffered an injury which was permanent in nature. Explaining that the entire case “rose and fell” on the plaintiffs testimony, and her testimony was substantially impeached, the appellate court concluded that the trial court’s reasons for granting a new trial were clearly erroneous, because the evidence was not “undisputed.”
In Schmidt, the trial court granted a new trial on the basis that the verdict finding the accident in question did not cause the plaintiffs injuries was contrary to the manifest weight of the evidence, because the all three medical expert witnesses testified that it did, including a defense witness. The trial court dismissed the plaintiffs credibility issues, because “no reasonable juror would conclude ‘no causation’ ... in light of the opinions of the three doctors.” The appellate court reversed, finding that conclusion clearly erroneous, because the jury could reject any testimony, including that of experts. The trial judge erred in failing to defer to the jury where the jury could have come to its verdict based upon the lay testimony. “By failing to recognize the jury’s prerogative to reject the expert testimony on causation, particularly in light of the lay testimony which conflicted with the expert *1158 testimony, the trial court erred in concluding that the manifest weight of the evidence was contrary to the jury verdict.” Id. at 1110.
Some of the language in these cases seems to contradict the- holding of Broum that the appellate court should defer to the discretion of the trial court in granting a new trial, even where there is competent substantial evidence to support the jury verdict. In both Jordan and Schmidt the court seems to have concluded that because competent substantial evidence supported the jury’s verdict, which the trial court disregarded, the trial court abused its discretion. We think this runs afoul of the admonition in Brown v. Estate of Stuckey that “[t]he fact that there may be substantial, competent evidence in the record to support the jury verdict does not necessarily demonstrate that the trial judge abused his or her discretion.” Id. at 498.
If we apply the same rationale as was used in Jordan and Schmidt, we would have to find that the trial court abused its discretion. In this case, the trial court granted a new trial on the ground that it was “undisputed” that all of the expert and lay testimony showed Ferris suffered at least a neck strain as a result of the accident. However, the evidence was not “undisputed,” taking into account the lay testimony and the inferences that could be drawn from the evidence. Even though the doctors, including the defense doctor, all testified to a neck injury from the accident, all of their opinions rested on the credibility of Ferris’ reporting of both her symptoms as well as her prior history, similar to Jordan. Her chiropractor testified that she received a permanent injury but was not told about her back pain the week prior to the accident.
In several aspects, the defense was able to impeach Ferris. She told the jury that she didn’t like taking drugs, yet her extensive prescription history belied that claim. In particular, and relevant to her claim that she was symptomless prior to the accident, she had recent prescriptions for both Ibuprofen and hydrocodone just a week prior to the accident. She claimed that her activities were limited, particularly speed walking, but in her answers to interrogatories she failed to list that activity as one she could no longer tolerate. She claimed that she discontinued chiropractic care because of financial reasons, yet she spent thousands of dollars on dental treatments.
Circumstantial evidence in this case also permits an inference that the plaintiff suffered no injury. The week prior to the accident she had back pain severe enough that she saw her physician immediately. Not only would that suggest a prior cause for her continuing issues, it also suggests that when Ferris was in pain, she sought medical treatment. That Ferris did not seek treatment for a month also would support a finding of no injury from the accident. The limited damage to the plaintiffs car, together with the defendant’s description of the accident as a “tap” was also relevant evidence to the issue of whether the plaintiff was injured.
Because there is no record basis to show that the evidence was “undisputed” that an injury occurred, and the trial court did not consider the credibility of the plaintiff in its assessment, we could find that the trial court abused its discretion, just as the courts did in Schmidt and Jordan. It is most likely the result we would prefer, as the trial court should defer to the jury on issues of the weight to be given to expert testimony. Nevertheless, Brown teaches that the trial judge may grant a new trial although it is not “clear, obvious, and indisputable that the jury was wrong.” Brown further explains the very limited authority of the appellate court in reviewing the *1159 broad discretion granted to the trial court, and we think reasonable persons could differ as to the propriety of the action by the trial court, particularly where the defense counsel in closing argument admitted that the accident caused at least some injury. We therefore must affirm the trial court’s order of a new trial.
Alternatively, the appellant requests that we limit any new trial to a trial on non-permanent injuries only, as we did in The Hertz Corp. v. Gleason, 874 So.2d 1217 (Fla. 4th DCA 2004). The plaintiff in Hertz suffered two injuries as a result of the accident. He was immediately diagnosed with a cervical sprain and contusions of the hip and shoulder. Later, he was diagnosed with traumatic brain injury. The jury found no injury legally caused by the accident. The trial court granted a new trial, finding that the verdict was against the manifest weight of the evidence where the evidence that the plaintiff suffered at least some orthopedic injuries was undisputed. Our court affirmed, but we limited the new trial to the undisputed injuries, because the evidence regarding the causation by the accident of the neuro-logic injury was sharply disputed, and that factual determination should have been left to the jury. In this case, the trial court acknowledged that the evidence that the accident caused a permanent injury was likewise sharply disputed. Therefore, consistent with Gleason, we limit the new trial to the claim to non-permanent injuries, as the trial court determined in its motion for new trial that these were the injuries on which the jury’s verdict was contrary to the manifest weight of the evidence.

Affirmed.

TAYLOR, J., concurs.
DAMOORGIAN, J., dissents with opinion.

. Q. Prior to this crash on October 3, 2002, had you had neck issues that caused you problems and caused you to miss work or go to the doctor or things of that nature?
A. Yes, sir.