PARIENTE, J.
This case concerns the proper standard of review and the appropriate remedy when an appellate court reviews a trial court’s order granting a new trial on the ground that the jury verdict was contrary to the manifest weight of the evidence, where the trial court’s order was premised, at least in part, on an error of law. In this case, the trial court granted the plaintiffs’ motion for a new trial based on the manifest weight of the evidence. The trial court’s order, however, was premised, at least in part, on an error of law — specifically, that the jury could not reject the *246 uncontroverted testimony of the experts. On appeal, in reviewing the trial court’s order, the First District Court of Appeal did not give deference to the trial court’s erroneous conclusion of law. Schmidt v. Van, 65 So.3d 1105, 1107-08 (Fla. 1st DCA 2011).
In Kuebler v. Ferris, 65 So.3d 1154, 1158-59 (Fla. 4th DCA 2011), the Fourth District Court of Appeal expressly disagreed with the First District’s approach in Schmidt, emphasizing the “very limited authority of the appellate court in reviewing the broad discretion granted to the trial court,” even where the trial court’s grant of a new trial is premised, at least in part, on an error of law. Because of this express and direct conflict between the standard of review applied in Schmidt and Kuebler, we have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
We resolve this conflict by holding— consistent with the appellate standard of review generally applied to all trial court orders — that an appellate court properly applies a de novo standard of review to a trial court’s conclusions of law in an order granting a new trial based on the manifest weight of the evidence, giving no deference to the trial court’s legal conclusions. Therefore, we approve the reasoning of Schmidt to the extent that the First District’s analysis was consistent with this holding, and we disapprove Kuebler to the extent that the Fourth District interpreted this Court’s decisions in E.R. Squibb & Sons, Inc. v. Farnes, 697 So.2d 825 (Fla.1997), and Brown v. Estate of Stuckey, 749 So.2d 490 (Fla.1999), to require deference to a trial court’s conclusions of law, even where the trial court’s order was premised, at least in part, on an error of law.
However, although a trial court’s conclusions of law are not entitled to deference, its findings of facts and determinations of credibility are still entitled to deference because of the trial court’s superior vantage point of having been present during the entire trial. In this case, after correctly affording no deference to the trial court’s erroneous conclusion of law in Schmidt, the First District in its analysis then misapplied the standards set forth by this Court in E.R. Squibb & Sons and Stuckey by failing to defer to the trial court’s findings of fact and determinations of credibility and to recognize the trial court’s role in evaluating a motion for new trial. Instead, in reversing the trial court’s order, the First District incorrectly focused on whether competent, substantial evidence supported the jury’s verdict and reweighed the evidence in the trial court’s stead. We therefore also have jurisdiction in this case based on the First District’s misapplication of our precedent. See art. V, § 3(b)(3), Fla. Const.; see also State v. McMahon, 94 So.3d 468, 471 n. 2 (Fla.2012) (recognizing misapplication as a basis for conflict jurisdiction).
Although we conclude that the First District was correct in reversing the trial court’s order, we quash the First District’s decision because we conclude that reinstatement of the jury verdict was not the proper remedy in this case. Instead, when an appellate court has determined that a trial court’s grant of a new trial is premised, at least in part, on an error of law, the inquiry then becomes whether the trial court would have granted a new trial but for the error of law. Because we are unable to ascertain from a review of the record in this case whether the trial court would have reached the same result but for the error of law, the proper remedy is to return the case to the trial court for reconsideration of its order granting a new trial in light of the correct legal principles set forth in this opinion — specifically, that the jui-y could properly reject the experts’ uncontroverted testimony, provided that *247 the jury’s rejection of the uncontroverted expert testimony was premised on some reasonable basis in the evidence.
FACTS AND BACKGROUND
Charles Van, Sr., and his wife sued Daniel J. Schmidt, seeking recovery for injuries allegedly sustained in an October 2007 automobile collision, in which Schmidt rear-ended Van’s vehicle while intoxicated. Van asserted that as a result of the rear-end collision, he sustained injuries that included neck pain, resulting in a cervical spinal fusion surgery (surgery on the cervical vertebrae in the neck) in 2009. Liability was not contested; instead, Schmidt’s defense was that the automobile accident was not the cause of Van’s injuries. In contesting causation, Schmidt contended that the accident was a minor one, which caused minimal damage to both vehicles. Schmidt also pointed to Van’s medical history, which included preexisting back pain and spinal degeneration, a prior cervical spinal fusion surgery in 1991, and a prior car accident in 1998. Finally, Schmidt called into question Van’s credibility.
All of the medical experts who testified at trial, including the defense expert witness, agreed that the 2007 automobile collision was, at least in part, the cause of Van’s neck injury. The Vans introduced a videotaped deposition of the first expert, Dr. Zhou, a pain specialist. Dr. Zhou stated that Van first came into the clinic in August 2008 complaining of neck and lower back pain. Dr. Zhou did not anticipate that Van will ever be pain-free. In Dr. Zhou’s opinion, Van’s neck and lower back pain, as well as the 2009 cervical spinal fusion surgery, were a result of the 2007 accident. Dr. Zhou stated that the back pain was a result of the accident because Van did not have back pain before the accident.[1]
The second expert, Dr. Feussner, a neurologist, started seeing Van in December 2007 and referred him to Dr. Scott, the neurosurgeon who performed the 2009 cervical spinal fusion surgery after the accident. When Van provided his prior medical history to Dr. Feussner, he did not mention the prior cervical spinal fusion surgery in 1991 or the 1998 car accident. According to Dr. Feussner, there is not necessarily a correlation between the amount of damage to a vehicle and to an occupant. Dr. Feussner testified that it was his medical opinion that Van suffered a permanent injury to his neck that was directly related to and caused by the October 2007 accident. Even with a preexisting problem such as degeneration, which Van had, trauma suffered during a rear-end collision can accelerate or aggravate the problem. In contrast to his conclusion with respect to Van’s neck injury, Dr. Feussner testified that it was difficult to correlate the lower back pain with the accident because Van had complained of lower back pain prior to the accident, including just seventeen days before.
The third expert, Dr. Scott, was the neurosurgeon who performed the cervical spinal fusion surgery on Van in 2009. Dr. Scott testified that it is normal for people to develop spinal degeneration as they age, and smoking is a risk factor. Van, who was fifty-six years old at the time of the accident, was a life-long smoker. Such degenerative changes can exist without accompanying pain or symptoms, but trauma from an accident can trigger symptoms. Dr. Scott was aware that Van was in an automobile accident in 1998, in which he sustained abdominal injuries and, in the *248 following month, complained of back and neck pain. However, there were no medical records indicating that Van had neck problems for the six years prior to the October 2007 accident at issue. In Dr. Scott’s opinion, it was the October 2007 accident that caused Van’s current neck problems and his need for surgery. While the likelihood of a serious injury increases with the violence of an automobile accident, Dr. Scott could not say with any certainty that a low-speed accident cannot cause a neurological injury or that a high-speed accident is necessarily going to cause one.
Although Dr. Scott stated that Van did not disclose degenerative arthritis or prior surgeries on the patient intake form, Dr. Scott explained that the intake form can be overwhelming and that patients sometimes forget to include things. Finally, Dr. Scott stated that he had instructed Van that he did not need to wear a surgical collar, which Van wore during one of the days of trial. However, Dr. Scott testified that people sometimes end up wearing a collar for external support because of muscle atrophy and explained that Van has significant muscle atrophy at the surgical site and still uses the collar for comfort.
The defense presented Dr. Trimble as an expert witness. Dr. Trimble testified that he saw Van for a compulsory medical examination about four months after Van’s 2009 cervical spinal fusion surgery. On the MRIs and x-rays, Dr. Trimble observed degeneration, which is a long-standing wear and tear that does not happen quickly but rather over the course of years. The amount of degeneration was more than Dr. Trimble would expect for a man of Van’s age, but that degeneration can be aggravated or exacerbated by trauma.
With respect to Van’s neck pain, Dr. Trimble’s expert medical opinion was that Van became symptomatic as a result of the October 2007 motor vehicle accident and sustained permanent impairment as it related to the cervical spine. Although Van had neck problems and surgery in 1991, Dr. Trimble’s opinion as to causation was based on the fact that he did not see records indicating that Van was complaining of neck pain immediately predating the 2007 car accident, as well as based on Van’s statements about whether he had previously experienced neck pain. With respect to the lower back pain, however, Dr. Trimble testified that Van’s lower back injury predated the car accident because Van had been complaining of lower back pain just prior to the car accident.
In addition to the expert testimony presented, testimony was also provided by Van, his wife, and their daughter. Van’s wife testified that she saw her husband about an hour and a half after the accident, and he was having pain at that time in his back, neck, and right hip. She drove him to the emergency room. The Vans’ daughter testified that when her mother called her after the accident, her father was “complaining” and her mother “took him and had him checked.” The emergency room records from the day of the car accident reflected that Van was complaining of neck, back, and hip pain.
Van, his wife, and their daughter all testified that before the 2007 accident, Van was able to engage in various activities in which he is no longer able to engage, including carpentry, mechanic work, yard work, playing games with and chasing grandchildren, swimming, barbequing, walking the dogs, and going to the movies. Since the 2007 accident, Van was no longer able to travel to see his grandchildren and had problems sitting for extended periods of time. Van and his daughter testified that Van’s preexisting emphysema and chronic obstructive pulmonary disease *249 (COPD) did not impair his ability to engage in these activities before the accident. When questioned, Van stated that he was diagnosed with emphysema in the early 1970s and had not been able to work (his last job was in 1976), but he was previously able to enjoy his hobbies because he knew his limits. However, since the 2007 accident, he had been in constant pain.
Van also testified that he began smoking when he was very young. He was in an automobile accident in 1998, but did not recall complaining about his neck following that accident. Before the 2007 car accident with defendant Schmidt, Van had problems with his lower back, but the accident made the pain worse. Van stated that he had problems with his neck before the cervical spinal fusion surgery in 1991, but did not have ongoing neck problems after that surgery. Van described the impact from the 2007 accident as a “hard hit,” which caused serious damage to his vehicle. Van testified that he does not go to the doctor for every ailment or pain.
In contesting causation, Schmidt argued that the accident was a minor one. Specifically, he relied on photographs depicting minimal damage, as well as the fact that the damage to Van’s vehicle was only $800 and that it had not been repaired but his wife continued to drive it. Schmidt further relied on Van’s medical history, which included that Van was taking pain medication for back pain at the time of the accident, that he had a prior cervical spinal fusion surgery in 1991, that there was a previous car accident in 1998, in which Van was ejected from the vehicle, that Van had spinal degenerative disease and emphysema, and that Van was a long-time smoker, which' could cause degeneration of the spine. Schmidt also called into question Van’s credibility in asserting a lack of neck pain in the sixteen years prior to the October 2007 automobile accident, asserting that Van was not completely honest in his patient questionnaires and did not like to go to the doctor, and the fact that the doctors’ assessment of causation as to the neck pain was based on the lack of medical records concerning neck pain and Van’s self-reporting that he did not have any neck pain prior to the accident.
Upon the conclusion of the three-day trial, the jury returned a verdict finding that Van had not suffered injury as a result of the 2007 automobile collision, by answering “NO” to the question of whether “the negligence on the part of defendant, DANIEL J. SCHMIDT, [was] the legal cause of damage to plaintiff, CHARLES VAN, SR.” The Vans filed a motion for a new trial, which the trial court granted on the basis that the verdict was contrary to the manifest weight of the evidence.
In its order granting a new trial, the trial court found that
[t]he determination of causation in this case is not one that could be made by a lay observer, such as a bullet or knife wound. In this case, expert testimony was necessary for the jury to determine whether or not the rear-end collision had any causal relationship to [Van’s] spinal fusion.
The trial court then reviewed the evidence it found relevant to the issue of causation, including the fact that Van underwent cervical spinal fusion surgery in 1991 but had recovered, and the testimony of the medical experts that Van suffered injury as a result of the automobile collision.[2] The trial court stated that it had weighed and considered the defense’s evidence and arguments, which included the minimal dam *250 age to the vehicles, Van’s failure to advise the medical experts during initial visits of his prior surgery, and the preexisting degeneration of his cervical spine. The trial court found as follows with respect to the defense’s evidence:
While the degree of damage to the vehicles in the 2007 collision may be circumstantial evidence of lack of causation, there was no expert testimony from which non-experts could reasonably draw that conclusion. None of the doctors testified that the degree of damage to the vehicles was a factor in his opinion as to causation. There was no expert testimony regarding accident reconstruction or how such factors as speed, force, angles, strength of materials, or other such technical matters might affect causation of the injury complained of. No reasonable juror would conclude “no causation” in the absence of such expert testimony in light of the opinions of the three doctors.
While the Court acknowledges that [Van] was a “poor historian” by failing to initially report the earlier surgery to the doctors, it is clear that each doctor knew of the prior surgery before forming his opinion and before giving his testimony.... Each said that, in large part, his opinion was based on the absence of complaints regarding [Van’s] cervical spine prior to the 2007 collision. No reasonable juror, when considering [Van’s] credibility, would conclude that he would have chosen to not report cervical pain for sixteen (16) years prior to the 2007 collision in order to fabricate causation in that collision. His credibility had little, if any, weight on the issue of causation in light of the uncontrovert-ed opinions of the three informed and credible doctors.
... [The three doctors] all agreed that [Van’s] injury and resulting surgery was caused, at least in part, as a result of the 2007 collision. No reasonable juror would conclude that degeneration, to the exclusion of the collision, was the cause of [Van’s] injury in light of the testimony of the three doctors.
The trial court concluded that the verdict of no causation was contrary to the manifest weight of the evidence and accordingly granted the motion for new trial.
On appeal, the First District concluded that the trial court abused its discretion in granting the motion for new trial. Schmidt, 65 So.3d at 1109-10. The First District began its analysis by quoting the highly deferential standard of review set forth by this Court in Stuckey:
A trial court’s decision to grant a new trial on the grounds that the verdict is contrary to the manifest weight of the evidence is reviewed for abuse of discretion. Brown v. Estate of Stuckey, 749 So.2d 490 (Fla.1999). In [Stuckey ], the Florida Supreme Court explained the highly deferential standard of review an appellate court must apply when reviewing an order granting a new trial:
When reviewing the order granting a new trial, an appellate court must recognize the broad discretionary authority of the trial judge and apply a reasonableness test to determine whether the trial judge committed an abuse of discretion. If an appellate court determines that reasonable persons could differ as to the propriety of the action taken by the trial court, there can be no finding of an abuse of discretion.
Id. at 497-98.
Schmidt, 65 So.3d at 1107. The First District stated, however, that a reviewing court may find an abuse of discretion “in two circumstances: (1) where the evidence in the record does not support the trial court’s determination; or (2) where the *251 trial court’s determination rests on an incorrect conclusion of law.” Id. at 1108 (citing Jordan v. Brown, 855 So.2d 231, 234 (Fla. 1st DCA 2003); Corbett v. Wilson, 48 So.3d 131, 133 (Fla. 5th DCA 2010)).
The First District concluded that in this case, “the trial court’s determination that the jury verdict was against the manifest weight of the evidence was premised on an erroneous conclusion of law.” Id. Specifically, the First District pointed to the trial court’s ruling that “based on the evidence introduced through the testimony of the expert witnesses relative to causation, the jury could not determine that the 2007 accident caused no injury to Mr. Van, despite conflicting lay testimony and evidence introduced at trial.” Id.
The First District explained that this was error because “[i]t is well-established that a jury may reject any testimony, including testimony of experts.” Id. The First District observed that the standard jury instruction given to the jury in this case provided that the jury may accept or reject expert witness testimony, or give it the weight that the jury thinks it deserves. Id. (citing Fla. Std. Jury Instr. (Civ.) 601.2(b)). The First District recognized that the jury’s rejection of expert testimony must be premised on some reasonable basis in the evidence, but stated that “[l]ay testimony or evidence which conflicts with the expert testimony, as well as conflicting testimony by the plaintiff may provide a reasonable basis for rejecting expert testimony.” Id. (citing Wald v. Grainger, 64 So.3d 1201, 1205-06 (Fla.2011)).
The First District reasoned that “[t]he expert testimony in this case conflicted with much of the lay testimony presented to the jury. In such cases, where expert testimony conflicts with lay testimony, the trial court should defer to the jury to weigh the evidence.” Id. (citing Easkold v. Rhodes, 614 So.2d 495 (Fla.1993)). The First District then reviewed the evidence presented in this case:
Here, in addition to the medical experts, the jury heard testimony from several witnesses, including the plaintiffs, Mr. and Mrs. Van. Evidence and testimony introduced at trial portrayed the accident as a mere fender-bender. The jury examined photographs depicting the damage to the Vans’ vehicle, which was described by Mr. Van as a crack or scrape on the back bumper. Mr. Van further testified that the total damage to his vehicle was estimated to be approximately $800....
Other testimony offered at trial demonstrated that Mr. Van had an extensive medical history, which included a prior surgery, another automobile accident, and several significant medical diagnoses. Mr. Van testified that he had undergone a prior cervical spinal fusion surgery in 1991. Mr. Van testified that he had been in an automobile accident in 1998, in which he was ejected from the vehicle. Mr. Van testified that he had a back sprain shortly before the 2007 accident. In addition, medical records were introduced at trial revealing that Mr. Van had visited a hospital in 2006, complaining of severe lower back pain; that Mr. Van had visited the hospital less than a month before the 2007 accident, complaining of the same symptoms; and that he was taking the pain medication, Lortab, at the time of the 2007 accident.
Through the testimony of the medical experts, the jury heard that Mr. Van had pre-existing degeneration of his cervical spine. On cross-examination, Mr. Van revealed a number of other medical conditions affecting his overall health....
Testimony introduced at trial also demonstrated inconsistencies in Mr. *252 Van’s story on material issues in the case, placing his credibility into question. Despite Mr. Van’s testimony regarding his extensive medical history and pre-existing medical conditions, and that he had not been employed since the 1970’s [sic], he nonetheless testified that before the 2007 automobile accident he was able to work around the house, do carpentry work or mechanic work, and swim, run, and play with his grandkids. Mr. Van testified that after the 2007 accident, he was unable to engage in these activities.
When Mr. Van sought medical treatment following the 2007 accident, he failed to disclose to the treating physician that he had undergone a prior cervical spinal fusion surgery or that he had been involved in an earlier automobile accident. Mr. Van disclosed the prior cervical spinal fusion surgery only upon inquiry by his neurosurgeon.... During trial, the jury observed Mr. Van wearing a neck brace. During the cross-examination of Mr. Van’s neurosurgeon, the physician testified that there was no medical necessity for Mr. Van to be wearing the neck brace. In light of this testimony, the jury was entitled to judge Mr. Van’s credibility and accept or reject his testimony on all issues.
Id. at 1109. The First District concluded as follows:
Based on the evidence and testimony introduced at trial and the instructions presented to it, the jury could properly reject the testimony of the medical experts who opined that Mr. Van’s injuries were caused at least in part by the automobile accident and conclude that Mr. Van suffered no injury as a result of the 2007 accident. By failing to recognize the jury’s prerogative to reject the expert testimony on causation, particularly in light of the lay testimony which conflicted with the expert testimony, the trial court erred in concluding that the manifest weight of the evidence was contrary to the jury verdict. See Easkold v. Rhodes, 614 So.2d 495 (Fla.1993). Accordingly, we find that the trial court abused its discretion in granting the motion for new trial.
Id. at 1109-10. The First District therefore reversed and remanded for the trial court to enter a judgment on the jury verdict. Id. at 1110.
ANALYSIS
The issue in this case is whether the First District’s review of the trial court’s order granting a new trial was contrary to the standards set forth by this Court. This issue presents a pure question of law, and our review is de novo. Bosem v. Musa Holdings, Inc., 46 So.3d 42, 44 (Fla.2010) (“Because this is a pure question of law, our standard of review is de novo.”).
We begin by reviewing the general applicable law pertaining to orders granting a new trial. Then, we discuss the conflict cases and the standard of review that applies when the trial court’s order is premised, at least in part, on an error of law. Finally, we address the proper remedy in this case.
I. General Law Regarding Orders Granting a New Trial
“A trial judge may order a new trial on the grounds that the verdict is inadequate or excessive, against the manifest weight of the evidence, or both.” Stuckey, 749 So.2d at 498. “Regardless of whether a new trial was ordered because the verdict was excessive or inadequate or was contrary to the manifest weight of the evidence,” the appellate court applies the reasonableness test — if an appellate court determines that reasonable persons could *253 differ as to the propriety of the action taken by the trial court, there can be no finding of an abuse of discretion. Id.
Orders granting a new trial are required to state the specific grounds for granting a new trial:
Order Granting to Specify Grounds. All orders granting a new trial shall specify the specific grounds therefor. If such an order is appealed and does not state the specific grounds, the appellate court shall relinquish its jurisdiction to the trial court for entry of an order specifying the grounds for granting the new trial.
Fla. R. Civ. P. 1.530(f). This Court has explained the reason for requiring that the trial court’s order include specific grounds and findings:
Certainly a trial court is in a better position than an appellate court to pass on the ultimate correctness of a jury’s verdict, but superior vantage point does not give a trial judge unbridled discretion to order a new trial. Consequently, to facilitate intelligent appellate review of such orders the reasons which produced the need for the new trial must be set forth in the order.
Wackenhut Corp. v. Canty, 359 So.2d 430, 434 (Fla.1978) (citation omitted). The Court has explained the function of the trial court in evaluating a motion for a new trial on the ground that the verdict was contrary to the manifest weight of the evidence as follows:
Clearly, it is a jury function to evaluate the credibility of any given witness. Moreover, the trial judge should refrain from acting as an additional juror. Nevertheless, the trial judge can and should grant a new trial if the manifest weight of the evidence is contrary to the verdict. In making this decision, the trial judge must necessarily consider the credibility of the witnesses along with the weight of all of the other evidence.
E.R. Squibb & Sons, 697 So.2d at 826 (quoting Smith v. Brown, 525 So.2d 868, 870 (Fla.1988)). This Court later summarized the extent of the trial court’s discretion in ruling on a motion for new trial:
[T]his Court has repeatedly held that the trial judge has broad discretion in ruling on a motion for a new trial on the grounds that the verdict is contrary to the manifest weight of the evidence. A trial judge has the responsibility to draw “on his [or her] talents, his [or her] knowledge, and his [or her] experience to keep the search for the truth in a proper channel,” and the trial judge should always grant a motion for a new trial when “the jury has been deceived as to the force and credibility of the evidence or has been influenced by considerations outside the record.” Cloud [v. Fallis ], 110 So.2d [669], 673 [ (Fla. 1959) ]. The trial judge’s discretion permits the grant of a new trial although it is not “clear, obvious, and indisputable that the jury was wrong.” When a trial judge grants the motion for a new trial, he or she must articulate the reasons for the new trial in the order.
Stuckey, 749 So.2d at 497 (some alterations in original).
Once the trial court fulfills its functions in evaluating the motion for a new trial, this Court has emphasized that the highly deferential abuse of discretion standard applies on appellate review, because of the trial court’s favored vantage point. E.R. Squibb & Sons, 697 So.2d at 826. “The mere showing that there was evidence in the record to support the jury verdict does not demonstrate an abuse of discretion.” Id. (emphasis omitted) (quoting Smith, 525 So.2d at 870). Rather, “the reasonableness test” applies to determine whether the trial court abused its discre *254 tion: “If reasonable [persons] could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion.” Id. at 826-27 (bracketed alteration in original) (quoting Smith, 525 So.2d at 869-70).
In E.R. Squibb & Sons, this Court reviewed a decision in which the district court reversed the trial court’s grant of a new trial on the basis that “[tjrial court judges do not have the discretion to substitute their judgment for that of the jury in regard to the conflicting testimony of expert medical witnesses.” E.R. Squibb & Sons, 697 So.2d at 826 (quoting Farnes v. E.R. Squibb & Sons, Inc., 667 So.2d 1004, 1005 (Fla. 3d DCA 1996)). This Court quashed the district court’s decision and explained that although it is “a jury function to evaluate the credibility of any given witness,” the trial judge “can and should grant a new trial if the manifest weight of the. evidence is contrary to the verdict.” Id. (quoting Smith, 525 So.2d at 870).
In Stuckey, 749 So.2d at 494, this Court reviewed a district court decision in which the district court reversed the grant of a new trial because it was not clear, obvious, and indisputable that the jury was wrong. This Court reversed the district court, holding that the district court’s statement of law was contrary to this Court’s prior decisions that afford a trial court broad discretion in ruling on a motion for a new trial. The Court further stated that “the quoted principle originated in a district court of appeal decision applying the substantial, competent evidence standard that was issued prior to this Court’s rejection of that standard in Cloud.” Id. (discussing Cloud, 110 So.2d 669). The Court explained that prior to its decision in Cloud, Florida appellate courts applied two standards when reviewing an order for a new trial based on the verdict being contrary to the manifest weight of the evidence: (1) the competent, substantial evidence standard, under which trial courts were directed to grant a motion for new trial only when the verdict was not supported by competent, substantial evidence; or (2) the broad discretion doctrine, under which trial courts were credited with having a superior vantage point at trial and given the responsibility of determining if the verdict was unjust. Id. at 494-95. The Court stated that its decision in Cloud resolved the conflict by adopting the broad discretion doctrine and rejecting the competent, substantial evidence doctrine. Id. at 495. The Court then set forth the proper standards to be applied by the appellate court:
When reviewing the order granting a new trial, an appellate court must recognize the broad discretionary authority of the trial judge and apply the reasonableness test to determine whether the trial judge committed an abuse of discretion. If an appellate court determines that reasonable persons could differ as to the propriety of the action taken by the trial court, there can be no finding of an abuse of discretion. The fact that there may be substantial, competent evidence in the record to support the jury verdict does not necessarily demonstrate that the trial judge abused his or her discretion.
Id. at 497-98 (emphasis added). The Court reviewed the record in Stuckey, concluding that “the trial judge acted within his broad discretion in granting the motion for a new trial” and “while reasonable persons might differ, ... the action of the trial judge was not unreasonable and the grant of a new trial should have been affirmed.” Id. at 498-99.
II. Orders Premised, At Least in Part, on an Error of Law
The first conflict issue presented concerns the proper standard to be applied by *255 an appellate court when reviewing an order granting a new trial on the ground that the verdict was contrary to the manifest weight of the evidence, where the trial court’s order was premised, at least in part, on an error of law. We conclude that the First District in Schmidt correctly held that the same deference is not required where the basis for reversal is a legal one and that the Fourth District in Kuebler erred to the extent that it held that a reviewing court is required to afford deference to a trial court’s legal conclusions, even where the trial court’s order was premised, at least in part, on an error of law.
The First District in this case held that a trial court commits reversible error “in determining that the manifest weight of the evidence was contrary to the verdict and granting a new trial in two circumstances: (1) where the evidence in the record does not support the trial court’s determination; or (2) where the trial court’s determination rests on an incorrect conclusion of law.” Schmidt, 65 So.3d at 1107-08 (citing Jordan, 855 So.2d at 234; Corbett, 48 So.3d at 133). In setting forth this holding, the First District relied on the reasoning of the Fifth District in Cor-bett and a prior decision of the First District in Jordan. We now briefly discuss those cases.
In Corbett, 48 So.3d at 133, the Fifth District reversed the trial court’s grant of a new trial on the basis that the trial court’s determination rested on an error of law. In that case, the plaintiffs brought suit for personal injuries allegedly resulting from a car accident. Id. at 132. The jury found that the defendant was the legal cause of the injuries, but found against the plaintiffs on the issue of permanency and gave no award for pain and suffering. Id. The trial court granted the plaintiffs’ motion for a new trial, first determining that “a jury verdict adverse to a plaintiff on the issue of personal injury cannot be sustained unless there is expert testimony that contradicts the plaintiffs expert opinion.” Id. at 133. The trial court further found that the defendant failed to produce any admissible evidence to contradict the expert testimony presented. Id. The plaintiffs’ expert testified at trial that the injured party had suffered permanent accident-related post-traumatic stress disorder as a result of the accident, and the defendant’s counsel impeached the expert with prior inconsistent deposition testimony. Id. The trial court ruled that the jury’s verdict was contrary to the manifest weight of the evidence because the defendant could not use the impeachment testimony as substantive evidence, the deposition testimony could not qualify as rebutting expert testimony, and the jury was not permitted to disregard unrebutted expert testimony. Id.
The Fifth District held that “the case law relied upon by the trial court to exclude [the] prior inconsistent testimony is no longer good law.” Id. The Fifth District held that the trial court made another legal error, which is similar to the error at issue in the case currently before this Court: “The trial court also incorrectly concluded that expert testimony unrebut-ted by other expert testimony cannot be rejected by the jury. The jury is free to weigh the credibility of an expert witness, just as any other witness, and to reject such testimony, even if uncontradicted.” Id. at 134. Because the legal premises on which the trial court found the verdict to be contrary to the manifest weight of the evidence were erroneous, the Fifth District reversed and remanded for reinstatement of the jury verdict. Id., at 133-34. The First District in Schmidt followed the Cor-bett rationale, reversing the grant of a new trial because the trial court’s ruling “was *256 premised on an erroneous conclusion of law.” Schmidt, 65 So.3d at 1108.
The First District in Schmidt also relied on its prior decision in Jordan, 855 So.2d at 234, in which it had applied a less deferential standard of review and reversed the grant of a new trial based on the manifest weight of the evidence because there was no evidence in the record to support the trial court’s order. At the conclusion of the trial in Jordan, the jury-returned a verdict finding that the plaintiff had not suffered an injury as a result of falling when the defendants’ dog aggressively jumped on her, and the trial court granted a new trial on the ground that the jury’s verdict was contrary to the manifest weight of the evidence. Id. at 232-33. The trial court’s determination “was based solely on the trial court’s findings,” that “ ‘[tjhere was uncontroverted testimony that plaintiff was injured and incurred medical bills as a result of the fall’ and, further, although there was substantial controversy over the extent of her injuries, that there was ‘none over the fact that she was permanently injured as a result of the dog’s conduct.’ ” Id. at 233-34. The district court found no record support for this determination because “whether [the plaintiff] had been injured in the fall and the extent of her injuries were hotly contested, contrary to the findings of the trial court’s order. ... The [defendants’] impeachment of [the plaintiffs] testimony was legally sufficient to place her credibility in question. As a result, the jury was entitled to judge her credibility and accept or reject her testimony on all issues.” Id. at 234 (emphasis added). The Jordan court therefore concluded:
In reviewing an order granting new trial we are dependent on the trial court to articulate reasons supporting its order. For the reasons explained above, we conclude that the trial court’s finding that there was no controversy over the fact that [the plaintiff] was permanently injured has no support in the record and is clearly erroneous. Further, because it is clear from the record that the issue of whether plaintiff was injured in the fall was highly controverted, the trial court’s finding that “[t]here was uncon-troverted testimony that plaintiff was injured” is similarly clearly erroneous. Accordingly, we find that the trial court abused its discretion under the Stuckey test.
Id. (citation omitted).[3]
In contrast, in Kuebler, 65 So.3d at 1158, the Fourth District expressly rejected the rationale used by the First District in both Jordan and Schmidt. In Kuebler, after a jury determined that an automobile accident was not a legal cause of injury to the plaintiff, the trial court granted a motion for new trial, concluding that while evidence of permanency of the plaintiffs injury was hotly contested, all of the evidence showed at least some injury. Id. at 1154- *257 55. In its order, the trial court agreed with the plaintiff that “the undisputed testimony of the witnesses, expert and lay, established that the Plaintiff had suffered some injury” and that “the evidence at trial established at the very least that the Plaintiff suffered a neck sprain as a result of the accident.” Id. at 1156. The defendant appealed, claiming that the trial court abused its discretion in granting the motion because there was some evidence that the plaintiff suffered no injury at all. Id. at 1155.
After first setting forth the deferential standard of review from Stuckey, the Fourth District observed that “[d]espite this deferential standard, some courts have held that a trial court may abuse its discretion by granting a new trial where the articulated reasons set forth in the order have no basis in the record or are based on incorrect conclusions of law,” citing Jordan and the First District’s decision in Schmidt. Kuebler, 65 So.3d at 1157 (emphasis added) (citing Schmidt, 65 So.3d 1105; Jordan, 855 So.2d 231).
The facts of Kuebler are similar to those of Schmidt — even though all of the medical experts, including the defense expert, testified to a neck injury from the accident, the lay evidence and impeachment of the plaintiff’s credibility permitted an inference to the contrary. See id. at 1158. The plaintiff in Kuebler was impeached on inconsistencies in her statements and her failure to accurately report her medical history to the testifying chiropractor. Id. In addition, circumstantial evidence supported an inference that the plaintiff suffered no injury:
The week prior to the accident she had back pain severe enough that she saw her physician immediately. Not only would that suggest a prior cause for her continuing issues, it also suggests that when [the plaintiff] was in pain, she sought medical treatment. That [the plaintiff] did not seek treatment for a month also would support a finding of no injury from the accident. The limited damage to the plaintiffs car, together with the defendant’s description of the accident as a “tap” was also relevant evidence to the issue of whether the plaintiff was injured.
Id. Nevertheless, despite evidence supporting the inference of no injury, the Fourth District affirmed the trial court’s grant of a new trial because reasonable persons could differ as to the propriety of the trial court’s decision:
Because there is no record basis to show that the evidence was “undisputed” that an injury occurred, and the trial court did not consider the credibility of the plaintiff in its assessment, we could find that the trial court abused its discretion, just as the courts did in Schmidt and Jordan. It is most likely the result we would prefer, as the trial court should defer to the jury on issues of the weight to be given to expert testimony. Nevertheless, [Stuckey ] teaches that the trial judge may grant a new trial although it is not “clear, obvious, and indisputable that the jury was wrong.” [Stuckey ] further explains the very limited authority of the appellate court in reviewing the broad discretion granted to the trial court, and we think reasonable persons could differ as to the propriety of the action by the trial court, particularly where the defense counsel in closing argument admitted that the accident caused at least some injury. We therefore must affirm the trial court’s order of a new trial.
Id. at 1158-59.
Judge Damoorgian dissented, disagreeing with the majority that a reversal would run afoul of Stuckey: “A trial judge’s discretion is not unfettered. Where the trial *258 judge’s premise for granting a new trial was based on an incorrect conclusion of law, or where the evidence in the record does not support the trial court’s determination, there is an abuse of discretion.” Id. at 1159-60 (Damoorgian, J., dissenting) (emphasis added). He concluded: “The majority concedes that there was no record basis to support the trial court’s conclusion that the evidence was ‘undisputed’ that an injury occurred. In fact, there was conflicting evidence on the issue of whether the plaintiff suffered any injury from the accident.” Id. at 1160.
We conclude that to the extent the Fourth District in Kuebler interpreted E.R. Squibb & Sons and Stuckey to require deference to a trial court’s conclusions of law, even when the trial court’s order was premised, at least in part, on an error of law, the Fourth District took our decisions in those cases too far. We agree with the First District in Schmidt, the Fifth District in Corbett, and Judge Dam-oorgian’s dissent in Kuebler to the extent that those opinions reasoned that the same deference is not required where the basis for reversal is a legal one. As the Second District has explained: Tri-Pak Mach., Inc. v. Hartshorn, 644 So.2d 118, 119-20 (Fla. 2d DCA 1994) (emphasis added) (footnote omitted) (citations omitted). We conclude that a trial court’s conclusions of law in an order granting a new trial are not entitled to deference because the trial court’s superior vantage point is not implicated. In other words, a reviewing court can determine the legal issue just as well as the trial court. However, the trial court’s findings of fact and determinations of credibility are still entitled to the same deference as in orders that are not premised, at least in part, on an error of law, because of the trial court’s superior vantage point of having been present during the entire trial.
A trial court has broad discretion when deciding whether to override a jury’s verdict on the ground that it is contrary to the manifest weight of the evidence. But “the closer an issue comes to being purely legal in nature, the less discretion a trial court enjoys in ruling on a new trial motion.” This discretion is significantly reduced when the motion concerns a purely legal question. This is so because an error involving a purely legal question can be as accurately reviewed from an appellate record as from the trial judge’s bench. The trial judge does not have a “superior vantage point” for review of legal errors, as compared to other trial errors.
III. Misapplication of E.R. Squibb & Sons and Stuckey
Having resolved the first conflict issue by concluding — consistent with the standard of review generally applied to all trial court orders — that a trial court’s conclusions of law are not entitled to deference, but that the trial court’s findings of fact and determinations of credibility are still entitled to deference, we now turn to the second conflict issue. Despite correctly identifying the legal error in the trial court’s order, the First District in Schmidt then misapplied our precedent in E.R. Squibb & Sons and Stuckey by simply disagreeing with the trial court’s assessment of the facts and weighing of the evidence and proceeding to analyze whether competent, substantial evidence supported the jury’s verdict. Although the Fourth District in Kuebler erred with respect to the level of deference that applies on review when the trial court’s grant of a new trial is premised, at least in part, on an error of law, the Fourth District correctly recognized that statements made by the First District in Schmidt appeared to contradict the applicable standard as set forth by this Court:
*259 Some of the language in these cases seems to contradict the holding of [Stuckey ] that the appellate court should defer to the discretion of the trial court in granting a new trial, even where there is competent substantial evidence to support the jury verdict. In both Jordan and Schmidt the court seems to have concluded that because competent substantial evidence supported the jury’s verdict, which the trial court disregarded, the trial court abused its discretion. We think this runs afoul of the admonition in Brown v. Estate of Stuckey that “[t]he fact that there may be substantial, competent evidence in the record to support the jury verdict does not necessarily demonstrate that the trial judge abused his or her discretion.” Id. at 498.
Kuebler, 65 So.3d at 1158.
Based on our precedent, once the First District identified the error of law made by the trial court in granting a new trial, the First District was not at liberty to then reweigh the evidence presented in the case to decide whether the jury reached a result supported by the evidence. In other words, although an appellate court reviews the trial court’s conclusions of law de novo, the district court does not have carte blanche to reweigh the evidence in the trial court’s stead. Simply put, although the legal conclusions are not entitled to deference, the trial court’s findings of fact and determinations of credibility are still entitled to the same deference as in other trial court orders, and the trial court’s role in evaluating a motion for new trial is the same. By disregarding these principles and instead reweighing the evidence and evaluating credibility after identifying the legal error, the First District in Schmidt misapplied this Court’s decisions in E.R. Squibb & Sons and Stuckey.
The First District in Schmidt correctly recognized that the trial court’s conclusion of law was in error because “[i]t is well-established that a jury may reject any testimony, including testimony of experts.” Schmidt, 65 So.Sd at 1108. However, the First District erred when it then held that “[t]he expert testimony in this case conflicted with much of the lay testimony presented to the jury. In such cases, where, expert testimony conflicts with lay testimony, the trial court should defer to the jury to weigh the evidence.” Id. (emphasis added).
This Court has previously rejected similar reasoning in E.R. Squibb & Sons, where we quashed a district court’s decision that held that “it is for the jury to resolve and weigh the conflicting testimony. Trial court judges do not have the discretion to substitute their judgment for that of the jury.” 697 So.2d at 826 (quoting Farnes, 667 So.2d at 1005). Rather, this Court held that although it is “a jury function to evaluate the credibility of any given witness,” the- trial judge “can and should grant a new trial if the manifest weight of the evidence is contrary to the verdict. In making this decision, the trial judge must necessarily consider the credibility of the witnesses along with the weight of all of the other evidence.” Id. (quoting Smith, 525 So.2d at 870).
The First District also extensively reviewed the lay evidence and credibility issues that the jury could have relied on in rejecting the expert testimony. Schmidt, 65 So.3d at 1109-10. The First District concluded:
Based on the evidence and testimony introduced at trial and the instructions presented to it, the jury could properly reject the testimony of the medical experts who opined that Mr. Van’s injuries were caused at least in part by the automobile accident and conclude that *260 Mr. Van suffered no injury as a result of the 2007 accident. By failing to recognize the jury’s prerogative to reject the expert testimony on causation, particularly in light of the lay testimony which conflicted with the expert testimony, the trial court erred in concluding that the manifest weight of the evidence was contrary to the jury verdict.
Id. The First District’s focus in its reasoning was on the jury’s decision and the evidence supporting it, rather than the propriety of the trial court’s decision to grant a new trial. In other words, in reversing the trial court’s grant of a new trial, the First District focused on whether the evidence supported the jury’s verdict, which is at odds with this Court’s rejection of the competent, substantial evidence standard in Stuckey, 749 So.2d at 495.
Accordingly, we again emphasize the following with respect to a trial court’s order granting a new trial based on the manifest weight of the evidence: (1) a reviewing appellate court may not focus on whether the jury verdict was supported by competent, substantial evidence, but rather on whether “reasonable persons could differ as to the propriety of the action taken,” Stuckey, 749 So.2d at 497; and (2) a trial court is not required to defer to the jury’s weighing of conflicting testimony in considering the motion. Rather, in making its decision, the trial court “must necessarily consider the credibility of the witnesses along with the weight of all of the other evidence. The trial judge should only intervene when the manifest weight of the evidence dictates such action.” Id. at 497 (citation omitted) (quoting Smith, 525 So.2d at 870). In other words, it is the trial court’s responsibility — not the district court’s — to weigh the evidence, consider the credibility of the witnesses, and determine whether the jury “has reached an unjust decision on the facts.” Id. at 495.
IV. The Proper Remedy
Having resolved the two conflict issues presented in this case, we turn to the final issue presented — the proper analysis and remedy to be applied by an appellate court when it determines that a trial court’s order granting a new trial was premised, at least in part, on an error of law.[4] Although the First District in Schmidt properly reversed the trial court’s order in this case, we do not agree with the First District that the proper remedy is to remand for the trial court to enter judgment on the jury verdict.
In the context of a trial court’s grant of a new trial based on the manifest weight of the evidence, where the decision is premised, at least in part, on an error of law, the proper remedy to be applied requires further analysis than simply reinstating the jury’s verdict. After concluding that a trial court’s grant of a new trial based on the manifest weight of the evidence was at least partly premised on a legal error, the appellate inquiry then becomes whether the trial court would have granted a new trial but for the error of law. If the appellate court cannot determine whether the trial court would have granted a new trial but for the error of law, as in this case, then the proper remedy is to remand the case to the trial court for reconsideration in light of the correct legal principles. On the other hand, if the only way that the trial court could have reached the result of granting a new trial was based on the legal error, then the appellate court could properly reverse the *261 trial court’s order and remand for reinstatement of the jury’s verdict.
After reviewing the trial court’s order and the record in this case, we cannot determine whether the trial court would have granted a new trial but for the error of law in its order. Our “review of the record shows that although there was an evidentiary basis for the jury verdict, there [would also be] extensive evidentiary support for” a trial court’s grant of a new trial on the basis that the verdict was contrary to the manifest weight of the evidence. E.R. Squibb & Sons, 697 So.2d at 827.
The record reflects that all of the experts agreed that the 2007 automobile collision was, at least in part, the cause of Van’s neck injury and resulting surgery. Further, the medical experts also agreed that there is not necessarily a correlation between the severity of damage to a vehicle and the injuries sustained by an occupant. The trial court in this case specifically found three of the doctors — Dr. Feussner, Dr. Scott, and Dr. Trimble — to be “informed and credible.”
Van’s extensive medical history included emphysema, a prior neck surgery in 1991, an automobile accident in 1998 in which he suffered abdominal injury, a back sprain shortly before the 2007 accident and pain medicine he was taking around the time of the accident, and a hospital visit in 2006 complaining of severe back pain. However, the majority of the prior medical history was unrelated to Van’s neck. Although it was clear that Van suffered from lower back pain and was in poor health prior to the accident, this did not necessarily weigh against a finding that Van suffered a neck injury as a result of the ear accident. In fact, most of the experts were unable to connect Van’s post-accident lower back pain to the 2007 crash because of his preexisting back pain. However, they unanimously agreed that Van’s post-accident neck pain was directly related to the car accident. The experts also testified that although Van suffered from spinal degeneration, which is a normal part of the .aging process, trauma can accelerate or exacerbate such degeneration.
With respect to the “demonstrated inconsistencies in Mr. Van’s story on material issues in the case, placing his credibility into question,” Schmidt, 65 So.3d at 1109, which were relied upon by the First District, Van explained that although he had not been employed since the 1970s, he was able to enjoy his hobbies and be active before the 2007 car accident because he knew his limits relating to emphysema. Regarding Van’s failure to initially disclose his prior neck surgery and other medical history to his treating physicians, Dr. Scott testified that the intake forms, which can be six to eight pages long, can be overwhelming and that patients frequently forget to include things. Finally, regarding the surgical collar that Van wore during one of the days of trial, although Dr. Scott testified that it was not medically necessary, he explained that Van still used the collar for comfort and that Van has significant muscle atrophy in his neck. Dr. Scott further explained that sometimes people do end up wearing a collar for external support because of muscle atrophy.
We are unable to ascertain from this review of the record whether the trial court would have reached the same result had it focused on the evidence and considered the credibility of witnesses, rather than focusing on whether a reasonable jury could reject the expert testimony. A grant of a new trial on the basis of the manifest weight of the evidence is heavily dependent on the trial court’s superior vantage point of having been present during the entire trial. Because the trial court’s order in this case was premised, at *262 least in part, on an error of law, we decline to apply the “tipsy coachman” doctrine to uphold the trial court’s order.[5] Rather, when trial courts have made errors of law in reaching findings in other contexts, appellate courts have remanded to trial courts for reconsideration of findings in light of the proper standard.[6]
Accordingly, under the circumstances of this case and on this record, we conclude that the proper remedy is for this case to be returned to the trial court for reconsideration of its order in light of the correct legal principles.
CONCLUSION
We conclude that the First District in Schmidt reached the correct result with respect to reversing the trial court’s grant of a new trial in this case because the trial court’s order was premised, at least in part, on an erroneous conclusion of law. We therefore disapprove the Fourth District’s decision in Kuebler to the extent the Fourth District interpreted our decisions in E.R. Squibb & Sons and Stuckey to require deference to a trial court’s conclusions of law, even when a trial court’s order is premised, at least in part, on an error of law. Instead, consistent with the standard of review generally applied to all-trial court orders, an appellate court properly applies a de novo standard of review to a trial court’s conclusions of law in an order granting a new trial based on the manifest weight of the evidence, giving no deference to the trial court’s legal conclusions. However, although a trial court’s conclusions of law are not entitled to deference, its findings of facts and credibility determinations are still entitled to deference because of the trial court’s superior vantage point of having been present during the entire trial. By failing to give deference to the trial court’s findings of fact and credibility and to recognize the trial court’s role in evaluating a motion for new trial in its review of the trial court’s order, the First District misapplied the directions of this Court in E.R. Squibb & Sons and Stuckey.
We ultimately quash the First District’s decision because we conclude that reinstatement of the jury verdict is not the proper remedy in this case. Instead, because we are unable to ascertain from a review of the record whether the trial court would have reached the same result without the error of law, we remand this case to the First District with directions that the case be returned to the trial court for reconsideration of its order in light of the correct legal principles.
It is so ordered.
*263 QUINCE, LABARGA, and PERRY, JJ., concur.
POLSTON, C.J., and LEWIS and CANADY, JJ., concur in result.

. To the contrary, the evidence reflected that Van had actually reported lower back pain in September 2007 — shortly before the accident — -and in July 2006.

. Although four medical experts were presented at trial, the trial court mentioned only Dr. Feussner, Dr. Scott, and Dr. Trimble in its order.

. In a subsequent case, the First District later reversed the grant of a new trial on the same basis. See Ring Power Corp. v. Rosier, 67 So.3d 1115, 1118-19 (Fla. 1st DCA 2011) (“The trial court abuses its discretion in granting a new trial where there is no record support for the reasons stated in its order. Here, the order granting a new trial focused on the 'unrebutted’ testimony of Rosier's expert .... The record does not support the trial court’s finding that the expert’s testimony on this issue was unrebutted; rather, the record reflects that the issue ... was highly controverted at trial.... [W]e reverse the order granting a new trial and remand with directions that the jury’s verdict be reinstated and judgment be entered in favor of Ring Power.” (footnote and citation omitted)). This Court granted review of Ring Power, see Rosier v. Ring Power Corp., 83 So.3d 709 (Fla.2012), but the case was later voluntarily dismissed, see Rosier v. Ring Power Corp., 91 So.3d 132 (Fla.2012).

. It is important to note that not every trial court order containing an error of law will fall in this category; rather, the decision must be premised, at least in part, on the error of law.

. Robertson v. State, 829 So.2d 901, 906 (Fla. 2002) ("[T]he 'tipsy coachman’ doctrine! ] allows an appellate court to affirm a trial court that 'reaches the right result, but for the wrong reasons’ so long as ‘there is any basis which would support the judgment in the record.’ " (quoting Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 644 (Fla. 1999))).

. See, e.g., Ultimate Makeover Salon & Spa, Inc. v. DiFrancesco, 41 So.3d 335, 338 (Fla. 4th DCA 2010) ("[T]he trial court’s order suggests that the court based its decision on the mistaken belief that it could not award section 448.08 attorney’s fees to defendants because they prevailed on a statute of limitations defense rather than on the merits. This was an incorrect standard that stymied the court’s exercise of discretion. We therefore reverse the order denying attorney’s fees to defendants and remand this case to the trial court for further proceedings consistent with this opinion.”); Thompson v. Douds, 852 So.2d 299, 305 (Fla. 2d DCA 2003) ("Usually when a trial court applies the incorrect legal standard, we reverse and remand for a new hearing at which the trial court must reconsider its decision in light of the proper legal standard.’’).