CAMPBELL, Chief Judge.
This is a consolidated appeal in which appellants/defendants, Phar-Mor of Florida, Inc. (Phar-Mor) and Searstown Partners, Ltd. (Searstown), challenge the trial court order that granted appellees/plain-tiffs, Linda Steuernagel and Donald Steuer-nagel (the Steuernagels), a new trial after the jury returned a verdict for appellants. Both appellants argue that the order granting the Steuernagels a new trial was an abuse of discretion by the trial judge. We agree with appellants and reverse on the basis of that issue. We do not reach the separate issue' raised by Searstown that the trial court erred in failing to grant Sears-town’s motion for directed verdict.
The Steuernagels filed a negligence action against appellants, alleging that they had incurred damages as a result of Linda Steuernagel’s alleged slip and fall on May 16, 1987, in a puddle of water in Phar-Mor’s retail store located in the Searstown Shopping Center in Clearwater. Searstown is the owner of the premises leased to Phar-Mor and was, under the terms of the lease, responsible to Phar-Mor for any necessary roof repairs.
On May 16, 1987, the day of Mrs. Steuer-nagel’s alleged slip and fall, no leaks existed when Phar-Mor opened that morning. During an all-day, heavy rainstorm, a leak developed in front of the pharmacy area, known as aisle thirteen. In response to the leak and in conformance with Phar-Mor store policy, Phar-Mor’s store manáger put several buckets and a bright yellow three-foot-high mop bucket under the leak next to a support column. The yellow mop bucket was about one-and-one-half feet in diameter and had two “Caution Wet Floor” signs on its sides. The store manager also constructed a barricade around the buckets to block off that area of the aisle from customers. The barricade consisted of three chairs turned so that customers could not sit in them, a five-foot-long mop handle extended from the yellow mop bucket to another bucket and two merchandise displays positioned to block customers from the area of the leak. The store manager testified that he instructed his employees to monitor the leak area and mop the floor if needed. He testified that the leak area was checked often during the day and that the buckets were emptied when necessary to keep them from overflowing. Before the manager left the store at 5:00 p.m., there were no customer problems or complaints with the leak. He observed no puddles of water on the floor during his work hours.
The pharmacist testified that he worked from 9:00 a.m. until 9:00 p.m., when the pharmacy closed. The remainder of the store closes at 10:00 p.m. The pharmacist testified he observed no problems involving a customer falling in aisle thirteen in front of the pharmacy.
The assistant manager worked from 1:00 p.m. until 11:00 p.m. on May 16, 1987. She testified that early in her shift she and the store manager walked the store and discussed the leak and the steps taken by the manager to keep the area dry and barricaded. The assistant manager testified she monitored the leak area frequently and observed no leaks except in the barricaded area. The assistant manager was notified by another employee during the evening of May 16,1987, that a customer had reported a slip and fall. The assistant store manager testified that she followed the employee to aisle thirteen across from the pharmacy and discovered Mrs. Steuernagel standing in the area.
Mrs. Steuernagel testified she was sit-tiikg when the ■ assistant manager approached her. No witnesses observed Mrs. Steuernagel fall. Mrs. Steuernagel testified that she and Mr. Steuernagel entered the store together and Mr. Steuernagel went to the back of the store to use the restroom. He testified that when he returned, he found Mrs. Steuernagel in a puddle of water on the floor and picked her up. Mrs. Steuernagel testified that she had proceeded to the pharmacy area of the *550 store and was looking at a display of vitamins in front of the pharmacy. She testified that she slipped and fell near the pharmacy side of aisle thirteen.
The testimony of the Steuernagels concerning where in aisle thirteen the alleged slip and fall occurred conflicted with the facts testified to by other parties. Other parties had testified that' there were no other leaks and no other puddles outside the barricaded area. Although the Steuer-nagels testified that there was no barricade, as testified to by the store manager and assistant manager, they confirmed seeing the chairs and a bucket.
There were severe conflicts in the evidence as it pertained to the facts necessary to establish any liability on the part of appellants for breach of a duty to warn the Steuernagels of a potentially hazardous condition. Even taking the facts solely as testified to by the Steuernagels, there were discrepancies that would be difficult to reconcile. The jury heard that testimony and had the opportunity to observe and judge the credibility of the witness. There was no testimony from any source except the Steuernagels that a puddle of water existed on the floor outside of the barricade where Mrs. Steuernagel testified she fell. Even if their testimony is accepted as accurate, there is no evidence as to how long any such puddle had been present. Based on this evidence, the jury entered a verdict for appellants.
The trial judge made the following findings in support of his order for new trial:
1. The roof of the Phar-Mor Store was leaking rainwater to the extent that buckets had been located in an attempt to catch the water, and that a condition dangerous to the customers existed.
2. The Defendant, PHAR-MOR, did little or nothing to warn its customers of this known hazard.
3. The Plaintiff, LINDA STEUERNA-GEL, suffered a fall on the wet floor in the immediate area of a rain bucket, and sustained permanent injuries therefrom.
4.The Defendant, SEARSTOWN PARTNERS LIMITED, INC., had the legal responsibility to fix the roof and failed to do so having had several demands for repair by Defendant PHAR-MOR.
The trial judge made no findings that the jury was improperly influenced by considerations outside the record. His order for new trial is based solely on his perception of the manifest weight of the evidence. In making his decision, he made no findings or reference to the credibility of witnesses. Clearly, his order hinges entirely on his finding that “[t]he Defendant, PHAR-MOR, did little or nothing to warn its customers of this known hazard.” This is the crux of the Steuernagels’ case and is the primary issue the jury was charged to determine. The trial judge should have refrained from acting as an additional juror in determining that essential issue based upon what, at most, was conflicting evidence and certainly was not evidence manifestly weighted to one side or the other.
A trial judge should intervene by way of an order for new trial only when the manifest weight of the evidence dictates such action. Smith v. Brown, 525 So.2d 868 (Fla.1988). When the standard of appellate review of an order for new trial is applied as set forth in Smith v. Brown and Baptist Memorial Hospital, Inc. v. Bell, 384 So.2d 145 (Fla.1980), we must conclude that reasonable men could not differ that the trial judge abused his discretion in finding that the manifest weight of the evidence below was such that a jury of reasonable persons could not have found for appellants. Therefore, under the standard set by Smith v. Brown; Case v. Bentley, 527 So.2d 939 (Fla. 2d DCA), rev. denied, 534 So.2d 398 (Fla.1988); Fitzgerald v. Molle-Teeters, 520 So.2d 645 (Fla. 2d DCA), rev. denied, 529 So.2d 694 (Fla. 1988); McNair v. Davis, 518 So.2d 416 (Fla. 2d DCA 1988); and Crown Cork & Seal Co., Inc. v. Vroom, 480 So.2d 108 (Fla. 2d DCA 1985), we must reverse the order for new trial, order the jury verdict for appel *551 lants reinstated and judgment entered accordingly.
THREADGILL and PARKER, JJ., concur.