NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


FRED MEYERS and NINIBETH MEYERS, )
                                 )
             Appellants,         )
                                 )
v.                               )      Case No. 2D17-1681
                                 )
BONNEVA SHONTZ,                  )
                                 )
             Appellee.           )
_____  )

Opinion filed July 13, 2018.

Appeal from the Circuit Court for Pinellas
County; Pamela A.M. Campbell, Judge.

Elizabeth C. Wheeler of Elizabeth C.
Wheeler, P.A., Orlando, for Appellants.

Robert Hitchens of Hitchens and Hitchens,
P.A., St. Petersburg, and Frank DiCosola
of Frank DiCosola, P.A., Pinellas Park, for
Appellee.


SALARIO, Judge.

        A car owned by Fred Meyers and driven by Ninibeth Meyers rear-ended a

car in which Bonneva Shontz was a passenger.  Ms. Shontz sued the Meyerses for

negligence, and a jury returned a defense verdict.  Ms. Shontz moved for a new trial,

which the trial court granted.  The Meyerses appeal.  Because the trial court failed to

apply the correct legal standard to the motion for new trial—which is whether the jury's

verdict was against the manifest weight of the evidence—we reverse and remand for reconsideration.

I.

On July 9, 2014, Ms. Meyers was driving down Park Boulevard in Seminole. It had been raining on and off, and the roads were wet. As she neared the intersection of Park and Starkey Road, she saw a car stop in front of her. She hit the brakes, but there was no time to stop. Her car hit the car in front of her. Ms. Shontz was a passenger in that car, which was driven by her husband. The Shontzes' car was pushed into a car in front of it, which was driven by Nicholas Bozick. The Meyerses' car (a 2005 Chevy Aveo) was totaled. The Shontzes' car (a 2013 Chevy Equinox) had to have its rear bumper replaced. Mr. Bozick's car (a 2013 Toyota Highlander) had about $740 of damage. No one went to the hospital on the day of the accident.

Ten months later, Ms. Shontz sued Mr. and Ms. Meyers for physical injuries she says she suffered in the accident.[1] Her complaint alleged that Ms. Meyers negligently caused the wreck, that the wreck caused Ms. Shontz's injuries, and that Mr. Meyers was vicariously liable for Ms. Meyers's negligence under the dangerous instrumentality doctrine.[2] The Meyerses denied those allegations and, in addition,

_____

[1]Mr. Shontz initially joined the suit as a plaintiff. His claims, however, were settled prior to trial. The complaint also named the Shontzes' uninsured motorist carrier on a single claim for breach of contract. That claim, too, was resolved prior to trial. Ultimately, this case was presented to the jury solely as a claim by Ms. Shontz to recover for physical injuries allegedly caused by the accident. There was no claim or evidence at trial that the accident caused any other form of injury, loss, or damage (e.g., nominal damage or vehicular damage) to Ms. Shontz individually.

[2]"Under the dangerous instrumentality doctrine, an automobile owner is vicariously liable for damages caused by the operation of his vehicle by a permissive user." Fischer v. Alessandrini, 907 So. 2d 569, 570 (Fla. 2d DCA 2005).

- 2 -

contended that Mr. Shontz negligently operated his vehicle and that his negligence caused the accident. The case went to discovery and, after that, to trial.

Whether Ms. Meyers negligently caused the accident and whether the accident caused Ms. Shontz's injuries were hotly disputed at trial. Ms. Shontz's theory was that as the rear driver, Ms. Meyers was necessarily negligent, that Ms. Meyers was driving too fast on a rainy day, and that the accident injured Ms. Shontz's back or aggravated her existing back problems. The Meyerses, on the other hand, argued that the Shontzes' car suddenly changed lanes and left Ms. Meyers without room to stop. They also contended that Ms. Shontz's back problems were not caused by this accident, but rather by scoliosis—a condition involving a curvature of the spine— degenerative changes in the spine, a different car accident in 1995, or other incidents earlier in Ms. Shontz's life.

The evidence on the issue of negligence came from three witnesses—Mr. Shontz, Mr. Bozick, and Ms. Meyers. Mr. Shontz, who was driving the Shontzes' car, testified that before the accident he and Ms. Shontz left a Wal-Mart Neighborhood Market and drove a couple of miles on Park Boulevard toward Starkey Road. When he got to the intersection of Park and Starkey, he stopped for a red light behind Mr. Bozick's car, where he sat for "about five seconds or so." He heard skidding tires and told Ms. Shontz to brace herself right before they were hit by the Meyerses' car and pushed into Mr. Bozick's car. Mr. Shontz talked to Ms. Meyers at the accident scene, and she said that Mr. Shontz had cut her off. At trial, Mr. Shontz could not remember whether he changed lanes before the accident happened.

Mr. Bozick's testimony was a little more complicated. He testified that after he stopped at the light at Park and Starkey, he saw the Shontzes' car pull in

- 3 -

behind him and stop. He initially could not say whether the Shontzes' car changed lanes into the lane he was in, but after being presented with testimony he gave at a pretrial deposition he admitted that the Shontzes' car had switched lanes from the right into the lane his car occupied. He said, however, that the lane change was not "quick" or a "zip, zip type thing." He was asked on direct examination about how much time passed between when he stopped at the light and when the accident happened, and he testified both that it was "a couple of seconds" and "three to five seconds." He then was asked on cross-examination whether it was three to five seconds between his seeing the Shontzes' car behind him and the accident, to which he answered "three to seven seconds or so—maybe a little bit longer" but acknowledged that "it's difficult to give time." He also testified that he thought that Ms. Meyers was "going too fast for the road conditions at that time."

Ms. Meyers testified that before the accident she was driving down Park at about thirty-five miles per hour. Although Park has a forty-five-mile-per-hour speed limit in that area, she was driving more slowly because the streets were wet. She saw the Shontzes' car because she was traveling in the same lane behind it. At some point, Ms. Meyers moved one lane to the left and the Shontzes remained in the lane they were in. That situation prevailed for a few minutes. As Ms. Meyers approached Starkey Road, the Shontzes' car moved into her lane, leaving only one car length between her car and theirs. She testified that she saw the Shontzes' car coming into her lane "all of a sudden" and that "all of a sudden it just came in there." Ms. Meyers applied the brakes and tried to steer into a different lane but did not have enough time to avoid an accident.

The evidence on causation came from Ms. Shontz and several medical professionals. Much of it is in conflict. What seems clear is that Ms. Shontz did not

have any pain or, apart from stress, other symptoms either at the scene of the accident or immediately thereafter. She testified that three to four days later, however, she had a headache and neck and back stiffness.[3] She visited her chiropractor five days after the accident, complaining of moderate pain throughout her back and mild pain in her neck. He gave her chiropractic treatments. Ms. Shontz began seeing an orthopedic surgeon about a month after the accident. An MRI revealed disc bulges, protrusions, and herniations throughout her spine. Her complaints grew more severe, including pain and numbness in her left leg. She testified at trial that she is no longer able to do things she enjoyed doing before the accident.

It is also clear that Ms. Shontz had issues with her back long before the accident. She was diagnosed with scoliosis at twenty-one. There was evidence at trial that the curvature of the spine that comes with scoliosis can create wedging on the vertebrae, inflammation of the nerves, arthritis, and degenerative changes that all could cause the kinds of symptoms of which Ms. Shontz complained. She has received chiropractic treatment on and off since her diagnosis. Ms. Shontz was also in a bad car accident in 1995. She was a passenger in a car her son was driving on Interstate 275 when another car came over two lanes and struck her son's car on her side, causing it to spin around and slam into a concrete divider. Afterward, she had pain in her neck, shoulder, and lower back and suffered headaches. She treated with her chiropractor and neurologist and was told by her doctors that she had suffered a partial permanent injury as a result of the accident. She hired an attorney, brought a claim, and settled.

---

[3]She testified during direct examination that the stiffness occurred within twenty-four to forty-eight hours after the accident but clarified on cross-examination that it was three to four days.

There was no MRI or other objective evidence describing the condition of Ms. Shontz's back before the accident and thus no ready way to say that any particular physical condition in her spine (e.g., a bulge or herniation) did not exist before the accident but did exist after. Ms. Shontz's theory that the accident caused her injuries was based on her own subjective complaints of pain and physical limitations after the accident that she said did not exist before. Her orthopedic surgeon testified that her complaints were corroborated by the results of the postaccident MRI and opined that she suffered permanent injuries to her back as a result of the accident. Her chiropractor opined that she suffered a "classical whiplash injury" to her neck and back. Ms. Shontz testified that her symptoms, need for treatment, and limitations on her physical abilities were greater after the accident than they were before. She had, in her words, reached a "new normal" after the accident that was different from her old normal before it.

The Meyerses, in contrast, theorized that Ms. Shontz's symptoms were not caused by the accident, but were rather the result of her scoliosis, her 1995 accident, various other incidents, and degeneration in her spine. An orthopedic surgeon who testified on their behalf as an expert witness conducted a compulsory medical examination and opined that the accident with Ms. Meyers neither caused any back injury to Ms. Shontz nor aggravated any preexisting back injury. He theorized that the findings from the postaccident MRI took decades to develop and did not show any sign of being related to trauma, such as would occur in a car accident. Based on Ms. Shontz's complaints of pain subsequent to the accident, the surgeon testified that he believed that she suffered a sprain or strain to the neck which would have healed within months with minimal treatment.

The Meyerses supplemented the expert testimony with evidence that Ms. Shontz had visited chiropractors for problems with her neck and back many times in the years leading up to the accident. This included evidence that Ms. Shontz visited the chiropractor in the two months before the accident complaining of severe back pain, problems with her pelvis and left foot, and issues with walking. Ms. Shontz testified that she did not remember these visits. The Meyerses also presented evidence of other events from which one might infer that Ms. Shontz hurt her back, including an event in December 2000 in which she reported to workers' compensation that her spinal cord and wrist were affected during an incident at work, an event in April 2004 in which she reported to workers' compensation an incident during which she "jammed" her "shoulder/neck," an event in December 2006 in which she hurt herself doing a cartwheel and had to visit the chiropractor, an event in July 2008 in which she fell into water and had to visit the chiropractor, and an event in May 2009 in which she reported to workers' compensation that she had suffered a sprain or tear of "multiple body parts." Ms. Shontz testified at trial that she did not remember several of these events, and she admitted that she did not disclose them in answers to interrogatories. There was evidence that at least some of these events were not disclosed to her treating physicians.

After the parties finished presenting evidence, the trial court instructed the jury on the elements of a claim for negligence and gave the jurors the standard instructions on both negligence and causation. See Fla. Std. Jury Instr. (Civ.) 401.4, 401.12(a). In sum, it told the jury that negligence was a failure to use such care as a reasonable person would use under similar circumstances and that negligence was a legal cause of loss if it produces or contributes substantially to producing such loss.

The jury was given a verdict form consisting of several special interrogatories. The first asked, "Was there negligence on the part of Ninibeth Meyers on July 9, 2014, which was a legal cause of loss, injury, or damage to Plaintiff, Bonneva Shontz?"[4] The interrogatory thus combined the issues of negligence and causation into a single question, allowing the jury to answer "yes" if it found both elements proved and allowing it to answer "no" if it found either not proved. The jury answered "no," which resolved the case with a complete defense verdict.

Ms. Shontz filed a motion for a new trial in which she argued that the evidence overwhelmingly established both negligence and causation, stating that there was no evidence to support Ms. Meyers's sudden-lane-change theory and that all doctors, including the defense expert, agreed that Ms. Shontz had suffered some physical injury. The Meyerses filed a memorandum in opposition in which they asserted that Ms. Meyers had testified that the Shontzes' car had suddenly changed lanes in front of hers,[5] that Mr. Bozick's testimony was to similar effect, and that Mr. Bozick testified that the Shontzes' car changed lanes three to five seconds before the accident. She further argued that the trial evidence permitted the jury to find that the accident did not cause Ms. Shontz any injury and that the defense expert's opinion was based on the assumed truthfulness of Ms. Shontz's postaccident complaints, which the jury was free to reject. While the motion for new trial was pending, the trial court entered a judgment in the Meyerses' favor in accord with the verdict. Shortly thereafter, and without

---

[4]This interrogatory is consistent with the model verdict form for negligence with apportionment of fault contained within the standard instructions for use in civil cases. See Fla. Std. Jury Instr. (Civ.) Appendix B Form 1.

[5]The motion actually stated that Ms. Shontz gave this testimony, but it is obvious from the context that it was referring to Ms. Meyers.

conducting a hearing, the trial court granted Ms. Shontz's motion for new trial. In relevant part, its order read as follows:

> The court has reviewed the Motion and the Court file and the Defendants' Response to the Plaintiff's Motion for New Trial, and is otherwise duly advised on the premises, and finds that <u>the Defendant's response contains a representation of the testimony from Nicholas Bozick submitted at trial which is significantly different from the Court's recollection as to liability</u>. Therefore, it is hereby
>
> **ORDERED** as follows:
>
> 1. The Plaintiff's Motion for New Trial is hereby **GRANTED** on the basis of liability, <u>the Court is not ruling on the theory of causation</u>.

(Emphasis added.) This is the Meyerses' timely appeal from that order. <u>See</u> Fla. R. App. P. 9.110(a)(3), 9.130(a)(4).

II.

The Meyerses argue that by deciding to award a new trial on the sole basis that its recollection of Mr. Bozick's testimony differed from Ms. Meyers's recitation of it in the response to the motion for new trial, the trial court applied the wrong legal standard to Ms. Shontz's motion for a new trial. The legal question the trial court was required to but did not answer, they argue, is whether the jury's verdict was against the manifest weight of the evidence. This point is well taken.

A trial court may order a new trial when the jury's verdict is against the manifest weight of the evidence.[6] <u>Meadowbrook Meat Co. v. Catinella</u>, 196 So. 3d 373,

---

[6]There are, of course, additional bases upon which a trial court might decide to grant a new trial, <u>see</u> 4 Bruce J. Berman and Peter D. Webster, <u>Berman's Florida Civil Procedure</u>, § 1.530:9 (2018) (providing a nonexclusive list based on Florida appellate decisions), but the basis that the verdict is against the manifest weight of the

- 9 -

373 (Fla. 2d DCA 2015). Although a trial judge enjoys broad discretion to grant a new trial under the manifest weight ground, that discretion is neither absolute nor unreviewable. See Ashcroft v. Calder Race Course, Inc., 492 So. 2d 1309, 1314 (Fla. 1986) ("A trial court's discretion, while broad, is not unbridled."). A trial judge is not free to behave as a super-juror by disregarding a jury's verdict simply because the judge would have rendered a different one had it been the judge's choice to make. See Brown v. Estate of Stuckey, 749 So. 2d 490, 495 (Fla. 1999); Phar-Mor of Fla., Inc. v. Steuernagel, 550 So. 2d 548, 550 (Fla. 2d DCA 1989). Rather, a trial judge's discretion is properly exercised only when the evidence is "manifestly weighted to one side or the other." Phar-Mor, 550 So. 2d at 550 (emphasis added); see also State Farm Mut. Auto. Ins. Co. v. Caboverde, 65 So. 3d 46, 46 (Fla. 3d DCA 2011) ("Where the 'evidence was not manifestly weighted to either side,' a trial judge's decision to grant a new trial may be reversed." (quoting Hernandez v. Feliciano, 890 So. 2d 401, 404 (Fla. 5th DCA 2004))). The trial judge's discretion is thus not freewheeling but is instead a "check against a jury that has reached an unjust decision on the facts." Stuckey, 749 So. 2d at 495.

In deciding whether the evidence manifestly weighs against the verdict, the trial court must examine all of the evidence—giving consideration to its weight and credibility. See Van v. Schmidt, 122 So. 3d 243, 260 (Fla. 2013); Smith v. Brown, 525 So. 2d 868, 869 (Fla. 1988). If it decides to order a new trial, its order must state the reasons why so that its decision can be reviewed on appeal in a meaningful way. See Fla. R. Civ. P. 1.530(f); Stuckey, 749 So. 2d at 497-98. If the trial court has fulfilled

evidence was the primary ground argued below, the only ground argued by the parties on appeal, and the only one that would potentially apply in this case.

- 10 -

these functions, we will ordinarily review its order only to see if the trial court abused its discretion—making reversal proper only if reasonable people could not disagree that the trial court got it wrong—out of deference to the trial court's superior ability to recall, review, and evaluate what happened at the trial. See Van, 122 So. 3d at 253-54 (citing E.R. Squibb & Sons, Inc. v. Farnes, 697 So. 2d 825, 826-27 (Fla. 1997)).

If the trial court's order is based on an error of law, however, we do not afford it that kind of deference because the trial court's ability to consider and resolve legal issues is not superior to our own. See Van, 122 So. 3d at 258 (quoting Tri-Pak Mach., Inc. v. Hartshorn, 644 So. 2d 118, 119-20 (Fla. 2d DCA 1994)); Wal-Mart Stores, Inc. v. Wittke, 202 So. 3d 929, 931 (Fla. 2d DCA 2016). Accordingly, "an appellate court properly applies a de novo standard of review to a trial court's conclusions of law in an order granting a new trial based on the manifest weight of the evidence, giving no deference to the trial court's legal conclusions." Van, 122 So. 3d at 246.

Here, the trial court's stated ground for granting a new trial shows that it applied an incorrect legal standard to Ms. Shontz's motion. The reason it gave was that its recollection of Mr. Bozick's testimony about the accident differed from the statements in the Meyerses' response to the new trial motion. It granted a new trial, in substance, because it thought one witness testified differently than a party said he did. That is not the exercise the correct legal standard requires a trial court to conduct. And nothing in the order or elsewhere in our record suggests that the trial court here actually performed the function the standard requires—namely, to consider all of the evidence, including its weight and credibility, and to decide whether it manifestly weighed in Ms. Shontz's favor. The trial court's order was thus premised on an error of law, and we therefore owe no deference to its decision to grant a new trial. Cf. Collett v. State, 28 So. 3d 224,

- 11 -

225-26 (Fla. 2d DCA 2010) (reversing judgment in criminal case when, in denying a motion for new trial, the trial court applied an incorrect "sufficiency of the evidence" standard instead of the correct "contrary to the law or weight of the evidence" standard); Geibel v. State, 817 So. 2d 1042, 1044-45 (Fla. 2d DCA 2002) ("[A] trial court's failure to apply the correct legal standard to a motion for new trial is a legal error subject to de novo review.").

Two aspects of the trial court's order make the point clear. The first is that by relying solely on a discrepancy in recollection about unspecified testimony by a single witness, the order necessarily implies that the trial court did not consider the totality of the evidence on the question of whether Ms. Meyers was negligent.[7] Mr. Bozick was, of course, not the only witness to testify about the circumstances under which the accident happened. Ms. Meyers also testified, and her testimony supported the defense theory that the accident happened not because she was negligent, but because Mr. Shontz suddenly changed lanes leaving her without room to stop. Mr. Shontz testified as well, and he said, among other things, that he could not remember whether he changed lanes and that Ms. Meyers stated at the scene, consistent with her theory at the trial, that Mr. Shontz cut her off. Furthermore, Mr. Bozick's testimony concerning the amount of time that passed between the Shontzes' car coming to a stop and the accident was shifting—ranging between as few as two seconds and as many as seven. The trial court's order reflects that it thought Mr. Bozick testified differently than argued by the Meyerses in some respect and not that it engaged in the analysis of the

_____

[7]In fairness to the trial court, there are respects in which the Meyerses' response to the new trial motion misstates or exaggerates Mr. Bozick's actual testimony.

- 12 -

trial evidence that the correct legal standard requires.  See Smith, 525 So. 2d at 870

("[T]he trial judge must necessarily consider the credibility of the witnesses along with

the weight of all of the other evidence.  The trial judge should only intervene when the

manifest weight of the evidence dictates such action." (citation omitted)).

Ms. Shontz argues that all of this is academic because she gets the

benefit of a presumption that Ms. Meyers was negligent because she was the rear

driver.  And it is doubtless true that "where a defendant runs into the rear of plaintiff's

car while plaintiff is stopped for a traffic light or at an intersection, there is a presumption

of negligence of the defendant."  Birge v. Charron, 107 So. 3d 350, 359 (Fla. 2012)

(quoting Bellere v. Madsen, 114 So. 2d 619, 621 (Fla. 1959)).  But the presumption is a

rebuttable presumption affecting only the burden of production.  As the supreme court

has explained,

> where a set of facts is produced that "fairly and
> reasonably tends to show" that the presumption is
> misplaced or that the "real fact is not as presumed,"
> the presumption is rebutted and all issues of disputed
> fact regarding negligence and causation should be
> submitted to the jury to make a finding of fault without
> the aid of the presumption.

Birge, 107 So. 3d at 360 (quoting Eppler v. Tarmac Am., Inc., 752 So. 2d 592, 594, 595-

96 (Fla. 2000)).  Thus, "where evidence is produced from which a jury could conclude

that the front driver in a rear-end collision was negligent in bringing about the collision,"

the question of negligence should be submitted to the jury without regard to the

presumption.  Cevallos v. Rideout, 107 So. 3d 348, 349 (Fla. 2012).

Assuming without deciding that the sufficiency of the evidence to rebut the

presumption is within the direct scope of our review in this appeal, we have little

difficulty concluding that the evidence was sufficient here—at least for the purposes of

considering whether the trial court's legal error in addressing the motion for new trial was harmless in light of Ms. Shontz's claimed entitlement to an evidentiary presumption that might render its error inconsequential.[8]  Florida courts, including our own, have recognized that evidence of an unexpected lane change may be sufficient to rebut the presumption of rear-driver negligence.  See Jiminez v. Faccone, 98 So. 3d 621, 624 (Fla. 2d DCA 2012); Alford v. Cool Cargo Carriers, Inc., 936 So. 2d 646, 649-50 (Fla. 5th DCA 2006).  Here, Ms. Meyers testified that the Shontzes' car suddenly changed lanes as she approached the intersection leaving her without sufficient room to stop, which is consistent with what Mr. Shontz testified she said at the scene.  Depending on one's interpretation, aspects of Mr. Bozick's testimony are consistent with Ms. Meyers's version of events.  That evidence, if credited by a jury, would fairly and reasonably tend to show that Ms. Meyers was not negligent.  The trial court submitted the case to the jury on that and other evidence, and the jury had the opportunity to assess it.  The trial court's job on Ms. Shontz's motion for new trial thus was to determine whether the manifest weight of the evidence was that Ms. Meyers was not negligent.  The trial court focused solely on its recollection of Mr. Bozick's testimony and, in so doing, failed to make the legally correct inquiry.

    The second facet of the trial court's order that shows that it failed to apply the correct legal standard to Ms. Shontz's motion for new trial is that the order explicitly says that the trial court did not consider the issue of causation.  The special interrogatory upon which the jury decided the case asked both whether Ms. Meyers was

---

[8]The sufficiency of the evidence to rebut the presumption was litigated by way of Ms. Shontz's motion for directed verdict at trial.  The trial court denied the motion and allowed the issue of negligence to be decided by the jury.  Ms. Shontz has not taken a cross-appeal raising the propriety of that decision.

negligent and whether any negligence by Ms. Meyers was a legal cause of loss to Ms. Shontz. As a matter of logic, then, the jury was entitled to decide the case in the Meyerses' favor on the basis of negligence, causation, or both. No one knows how the jury sliced the onion on these two issues because both were lumped into a single question. What that means here is that the legal standard governing Ms. Shontz's new trial motion—which mandates consideration of whether the <u>verdict</u> is against the manifest weight of the evidence—required the trial court to consider not only the evidence on the issue of negligence, but also the evidence on the issue of causation. See, e.g., <u>Hernandez v. Gonzalez</u>, 124 So. 3d 988, 990 (Fla. 4th DCA 2013) (affirming order denying new trial where negligence was conceded and causation was disputed but where the jury answered a special interrogatory incorporating both issues in the negative). By deciding that it did not need to consider causation at all, the trial court again applied the wrong legal standard to Ms. Shontz's motion for a new trial.

The trial court's mistake might be attributed to imprecision in identifying operative legal concepts in the new trial order. The trial court instructed the jury on "negligence" (i.e., whether Ms. Meyers breached a duty of care) and "legal cause" (i.e., whether Ms. Meyers's breach of duty, if any, caused Ms. Shontz any injury) and asked the jury to answer a single interrogatory directed to both issues. For a defendant to be liable on a negligence claim, of course, there must be both negligence and causation. See <u>Whritenour v. Thompson</u>, 145 So. 3d 870, 873 (Fla. 2d DCA 2014) (stating that the "elements of a negligence action are the existence of a duty, a breach of the duty, a causal connection between the conduct and the resulting injury, and actual damages"); see also <u>McCain v. Fla. Power Corp.</u>, 593 So. 2d 500, 502-03 (Fla. 1992) ("As is obvious, a defendant might be under a legal duty of care to a specific plaintiff, but still

not be liable for negligence because proximate causation cannot be proven."); Schwartz v. Wal-Mart Stores, Inc., 155 So. 3d 471, 473 (Fla. 5th DCA 2015) ("Causation is an essential element of negligence, and a plaintiff is entitled to recover only for injury, loss, or damage caused by a defendant's negligence.").  Mr. Bozick's testimony went solely to the issue of Ms. Meyers's alleged negligence.  Yet in granting a new trial based exclusively on its recollection of that testimony, the trial court said that it was considering evidence of "liability" and ordering a new trial on that basis.  The apparent assumption in the trial court's order is that proof that Ms. Meyers was negligent is all that was required to prove liability in this case, and the rest was just a question of determining the amount of damages caused by her negligence.  But even if the jury had found that Ms. Meyers was negligent, she would still not be liable to Ms. Shontz if the jury also found that Ms. Meyers's negligence was not the cause of any of the injuries Ms. Shontz claims to have suffered.  Thus, to order a new trial on the basis that the "liability" portion of the verdict was against the manifest weight of the evidence, the trial court had to inquire into the manifest weight of the evidence on the issue of causation because causation was something Ms. Shontz had to prove to establish "liability."

At oral argument, Ms. Shontz argued that the verdict could not have been based on causation or, alternatively, that a verdict on causation would incontestably be against the manifest weight of the evidence because, at a minimum, Ms. Shontz incurred bills for diagnostic testing as a result of the accident.  And to be sure, diagnostic testing that is reasonably necessary to determine whether an accident caused a plaintiff's injuries would ordinarily be considered a form of loss caused by the accident.  See Blanford v. Polk County, 410 So. 2d 667, 669 (Fla. 2d DCA 1982); see also Sparks-Book v. Sports Auth., Inc., 699 So. 2d 767, 768 (Fla. 3d DCA 1997)

- 16 -

(reversing order denying motion for new trial where "[a]t a minimum, the plaintiff was entitled to recover for those medical expenses incurred for any diagnostic testing which was reasonably necessary to determine whether the accident caused her injuries").  But the courts have also recognized an exception to this general rule when "sufficient evidence is presented at trial regarding certain factors, including but not limited to pre-existing injuries with extensive treatments, lack of candor with treating physicians, videotapes that show actual physical capabilities, and expert medical opinions which conflict as to causation."  Hernandez, 124 So. 3d at 991-92; see also Finkel v. Batista, 202 So. 3d 913, 916 (Fla. 3d DCA 2016) ("Examples of such exceptions include lack of candor with treating physicians and conflicting medical opinions on whether the accident caused any injury."); Schwartz, 155 So. 3d at 473-74 (same).  Thus, in Department of Transportation v. Rosario, 782 So. 2d 927, 928 (Fla. 2d DCA 2001), we reversed an order granting a new trial to a plaintiff claiming back injuries in an automobile negligence case—notwithstanding the fact that the plaintiff had incurred expenses for diagnostic testing—where there was evidence that the plaintiff had back problems and extensive treatments predating the accident, the expert testimony on whether the accident caused the back injuries was in conflict, there was evidence that the plaintiff had not disclosed prior treatments and a prior accident to his treating physicians, and a videotape entered into evidence depicted his on-the-job capabilities.

There is some substantially similar evidence in this case.  There was a history of prior back problems, a prior automobile accident, prior work-related incidents, and years of treatment for issues related to the back.  The testimony of the parties' medical experts as to whether the accident caused injuries to Ms. Shontz's back was in conflict.  There was evidence that certain incidents and treatments were not disclosed to

- 17 -

Ms. Shontz's treating physicians. And there was evidence that certain incidents and treatments were not disclosed in answers to interrogatories that called for those disclosures. Thus, the exception to the general rule was in play in this case, and the jury could reasonably have decided in light of these facts that a finding of no causation was appropriate.[9] See Schwartz, 155 So. 3d at 474 (holding that the exception was implicated where expert testimony on the question of causation was in conflict).

Ms. Shontz also pointed out at oral argument that the defense medical expert testified that although the accident did not cause Ms. Shontz's back injuries, it did cause soft-tissue injury for which some medical treatment was appropriate. But that fact did not make it impossible for the jury to find that there was no causation. To begin with, the defense expert's testimony was based on his belief that Ms. Shontz's complaints about her postaccident symptoms were truthful. But here, there was evidence from which a jury might have inferred that Ms. Shontz's complaints were not truthful—including her history of preexisting back problems and her nondisclosure of certain other incidents that might be expected to result in injury to the back—which in turn could have led it to a finding of no causation. See, e.g., Finkel, 202 So. 3d at 916 (holding that a defense expert's admission that diagnostic testing was necessary was based on an assumption the plaintiff's complaints were truthful but that "[i]t was within the province of the jury to find that [the plaintiff] was not truthful"). Furthermore, the theory that the accident caused Ms. Shontz a soft-tissue injury is a different theory from

_____

[9]In view of our conclusion on this issue, we need not consider the Meyerses' additional argument that because the verdict form, by agreement, did not ask the jury to determine whether Ms. Shontz reasonably incurred diagnostic testing expenses in the event it found adversely to her on the issue of causation, Ms. Shontz is precluded from revisiting the jury's verdict as to that issue. See Schwartz, 155 So. 3d at 474; Hernandez, 124 So. 3d at 992.

the one Ms. Shontz presented at trial. At trial, Ms. Shontz's theory of causation was that the accident caused an injury to her spine or aggravated a preexisting condition in her spine. On this record, it is possible that the jury rejected that theory, and if it did so, we cannot, at least so far as our review of this order is concerned, fault the jury for not considering a different theory of causation that Ms. Shontz never asked it to consider.

Having determined that the trial court applied the wrong legal standard to Ms. Shontz's motion for a new trial, we must consider whether to remand for reinstatement of the judgment or for the trial court to reconsider the motion for new trial. Where, as here, the trial court's mistaken decision on a new trial motion hinges on an error of law, the dispositive question is "whether the trial court would have granted a new trial but for the error of law." Van, 122 So. 3d at 260; see also Wittke, 202 So. 3d at 931. If the answer to that question is no, we remand for reinstatement; if we cannot tell what the trial court would have done but for the error, we remand for reconsideration. Van, 122 So. 3d at 260. On our cold record, and in view of the conflicts in the evidence bearing both on negligence and causation, this looks like a case where it may be hard to say that the manifest weight of the evidence was with either party. We were not at the trial, however, and "are unable to ascertain from [our] review of the record whether the trial court would have reached the same result had it focused on the evidence and considered the credibility of witnesses," which is what the manifest weight of the evidence standard requires. Id. at 261; see also Buitrago v. Feaster, 157 So. 3d 318, 320 (Fla. 2d DCA 2014) (remanding for reconsideration where the trial court failed to apply the manifest weight of the evidence standard to an allegedly inadequate award of noneconomic damages). We therefore give the trial court the opportunity to reconsider the motion.

- 19 -

III.

Our decision today should not be understood as insisting that an order granting a new trial on the ground that the verdict was against the manifest weight of the evidence contain specific magic words to avoid a reversal. This is just a case where the trial court's order itself demonstrates that it applied an incorrect legal standard to a new trial decision. Cf. Geibel, 817 So. 2d at 1045 (explaining, in a criminal case, that "a trial court is not compelled to use 'magic words' when ruling on a motion for a new trial" but that "the ruling should demonstrate that the proper standard was applied to the motion"). For the reasons we have explained, we reverse the order granting a new trial and remand the case to the trial court with instructions to reconsider the motion for new trial and conduct such further proceedings as are consistent with this opinion.

Reversed and remanded with instructions.

MORRIS and LUCAS, JJ., Concur.