# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2023-0451
_____

CITY OF GAINESVILLE, d/b/a
GAINESVILLE REGIONAL
UTILITIES,

    Appellant,

    v.

JACOB T. RODGERS,

    Appellee.

_____

On appeal from the Circuit Court for Alachua County.
Donna M. Keim, Judge.

November 29, 2023

BILBREY, J.

The City of Gainesville appeals the judgment entered in a civil suit following a tragic accident that resulted in catastrophic injury to Jacob T. Rodgers. Because the trial court abused its discretion in denying the City's motion for a new trial, we reverse and remand for further proceedings.

*Factual and Procedural Background*

Three friends were traveling home from an evening class at their local community college in a pickup truck driven by Hank Blackwell. Rodgers was a backseat passenger in the truck.

Blackwell's truck was struck by an SUV belonging to the Gainesville Regional Utilities, an agency of the City of Gainesville. The driver of the City's SUV, William Stormant, had failed to stop at a stop sign. After Blackwell's truck was struck, it rolled, and two of the passengers were ejected. Sadly, Rodgers was one of them, and he was rendered paraplegic. At the time of the accident, Rodgers was not wearing a seat belt, and the truck driven by Blackwell was traveling more than ten miles over the posted speed limit.

Rodgers sued Stormant and the City for negligence, though Stormant was later dropped as a defendant. The City raised several defenses, including the defense that the suit was barred by the doctrine of sovereign immunity. The City then moved for summary judgment on the ground of sovereign immunity. The trial court denied that motion, and in its written order of denial, the trial court found as a matter of law that "the doctrine of Sovereign Immunity does not bar the instant action as [Stormant] was in the course and scope of his employment based upon the application of the dual-purpose exception to the going and coming rule to the undisputed facts."

The City took an interlocutory appeal to this court, and we affirmed the trial court's order without comment. *City of Gainesville v. Rodgers*, 272 So. 3d 377 (Fla. 1st DCA 2019).

As the case returned to the trial court, the City again argued that the suit was barred by sovereign immunity. The trial court ruled, though, that the issue was settled under the doctrine of law of the case by this court's affirmance of the order denying summary judgment. In this appeal, the City continues to maintain Rodgers' lawsuit is barred by sovereign immunity.

Another recurring issue at the lengthy trial was what Rodgers could argue regarding his failure to wear a seat belt. He sought to inform the jury that there is no Florida law requiring a backseat passenger to be seat belted. The City responded that such a claim would be misleading to the jury as to the issue of negligence, and the trial court agreed. So before closing arguments, the parties were instructed not to "mention the law regarding seat belts."

2

During its deliberations, the jury submitted several questions. Pertinent to the instant appeal, one question referred to the language on the verdict form which asked the jury to consider "was there negligence on the part of the plaintiff Jacob Rodgers which was the legal cause of loss, injury, or damage to plaintiff Jacob Rodgers." The jury asked about this language, asking "does this mean it is legal to not wear a seatbelt in the backseat or not? What does the word legal refer to?" After considerable discussion with counsel, the trial court gave the following written response: "Read the instructions and all of the questions on the verdict form and answer it in light of all of the evidence."

Later during deliberations, there was a jury question asking for additional instructions on the meaning of negligence. The trial court and counsel agreed to tell the jury to reread the instructions. The trial court was then handed a note reading:

> I feel that negligence was not explained well enough to base an opinion on this case, and we were ill prepared to determine a settlement amount. I feel that 5 of the jurors already were decided before deliberations, and that the settlement amount was not based on any kind of methodology.

With the agreement of counsel, the trial court responded: "Continue to deliberate."

The jury ultimately returned a verdict for Rodgers. It found no negligence on the part of Rodgers or on the part of Blackwell. Instead, Stormant was found to be one hundred percent at fault. Over $114,000,000.00 was awarded by the jury for non-economic damages.

The City moved for a new trial on two grounds — that the verdict was excessive and that it was against the manifest weight of the evidence. The evidence at trial was that Rodgers was not wearing a seat belt and that Blackwell's vehicle was traveling at an excessive rate of speed. Both these factors contributed to the injuries sustained by Rodgers, the City argued. It also argued that the jury was likely confused as to whether the lack of statutory requirement about seat belt use in a backseat prevented a finding

of any comparative negligence by Rodgers. The City asserted that counsel for Rodgers made the issue confusing for the jury, as evidenced by the jury questions. The City also sought remittitur claiming that the non-economic damages award was excessive. *See* § 768.74(3), Fla. Stat. (2015).

The trial court denied a new trial but did grant remittitur reducing the verdict for non-economic damages to $13,000,000.00. Rodgers appealed the order granting remittitur, and the City cross-appealed the denial of a directed verdict as well as the denial of a new trial. After we questioned whether the order granting remittitur was an appealable final order citing *Stanberry v. Escambia County*, 813 So. 2d 278 (Fla. 1st DCA 2002), Rodgers requested that we relinquish jurisdiction to the trial court to secure a final judgment. We did so and the trial court then entered a final judgment consistent with its grant of remittitur. Including economic damages, the final judgment entered was for $18,319,181.20. Rodgers' appeal was then dismissed by this court. *See Omni-Vest, Inc. v. Reichhold Chems., Inc.*, 352 So. 2d 53 (Fla. 1977). But the City's cross-appeal remained.

The City in an abundance of caution also appealed the final judgment in a separate appeal — the instant appeal. For a time, the City's cross-appeal and its separate appeal here were pending. Both parties agreed that dismissal of the City's cross-appeal was appropriate given the identity of issues with the instant appeal, so we dismissed the cross-appeal.

Here, the City again argues that the trial court erred in not finding the cause barred by sovereign immunity. It also now argues that the trial court erred in denying its motion for a new trial.

*Sovereign Immunity*

Earlier in the trial court proceedings, the City moved for summary judgment on the ground of sovereign immunity. A motor vehicle is a dangerous instrumentality. *Susco Car Rental Sys. of Fla. v. Leonard*, 112 So. 2d 832, 835–36 (Fla. 1959). As a result, the owner of a motor vehicle is normally liable for the negligence of the driver of the vehicle. *Id.* But the waiver of sovereign

4

immunity in section 768.28, Florida Statutes (2015), is specific and does not allow the dangerous instrumentality doctrine to overcome immunity. *Rabideau v. State*, 391 So. 2d 283, 284–85 (Fla. 1st DCA 1980), *aff'd*, 409 So. 2d 1045 (Fla. 1982). Accordingly, the City could only be liable for Stormant's negligence if he was acting within the course and scope of his employment at the time of the crash. *See* § 768.28(1), Fla. Stat. (waiving sovereign immunity for the State and "its agencies or subdivisions" for negligence "of any employee of the agency or subdivision while acting within the scope of the employee's office or employment"); *see also* § 768.28(9), Fla. Stat.; *City of Winter Park v. Veigle*, 367 So. 3d 568, 571 (Fla. 5th DCA 2023).

When the trial court denied the City's motion for summary judgment it found as a matter of law that Stormant was acting within the course and scope of employment when the accident occurred. Since we affirmed the denial of summary judgment, *Rodgers*, 272 So. 3d at 377, the trial court correctly held that our summary affirmance of the prior order operated as law of the case. Thus, the trial court could not revisit the issue of sovereign immunity.

"The doctrine of the law of the case requires that questions of law actually decided on appeal must govern the case in the same court and the trial court, through all subsequent stages of the proceedings." *Florida Dep't of Transp. v. Juliano*, 801 So. 2d 101, 105 (Fla. 2001) (citing *Greene v. Massey*, 384 So. 2d 24, 28 (Fla. 1980)). An interlocutory appeal may establish the law of a case. *See Schempp v. Schempp*, 339 So. 2d 672, 673 (Fla. 1st DCA 1976). While the City has argued that our summary affirmance in *Rodgers* precludes application of the law of the case, in fact, a per curiam affirmance is sufficient. *See Arch Se. Commc'ns, Inc. v. Abraham Commc'ns, Inc.*, 702 So. 2d 556, 558 (Fla. 2d DCA 1997); *see also Morris v. Winbar LLC*, 273 So. 3d 176, 178 (Fla. 1st DCA 2019) (discussing law of the case after an affirmance without a written opinion).

The law of the case doctrine is not absolute. Instead, "it also provides that an appellate court has the power to reconsider and correct an erroneous ruling that has become the law of the case where a prior ruling would result in a 'manifest injustice.'"

*Juliano*, 801 So. 2d at 106 (quoting *Strazzulla v. Hendrick*, 177 So. 2d 1, 5 (Fla. 1965)).  Here, we do not find a manifest injustice has resulted, and consequently, we decline to reconsider the applicability of sovereign immunity.  *See Strazzulla*, 177 So. 2d at 4 (explaining that law of the case should apply "except in unusual circumstances and for the most cogent reasons").  There was ample evidence that Stormant was acting within the course and scope of his employment at the time of the crash.  Therefore, we will not revisit the prior panel's decision in *Rodgers* affirming the trial court's holding.

The question of law we decided in *Rodgers* was whether sovereign immunity applied to bar his suit versus the City.  The trial court did not just deny the City's motion for summary judgment on the issue and determine it was a jury question.  Rather, the trial court held that Stormant was in the course and scope of his employment with the City at the time of the crash.  It was this holding from the trial court that was locked in as law of the case following *Rodgers*.  The trial court correctly declined to revisit the issue.

*Denial of a New Trial*

The City sought a new trial on the ground that the jury's verdict was against the manifest weight of the evidence.  The verdict found no negligence on the part of Rodgers and no negligence on the part of Blackwell.  Thus, the verdict found Stormant completely at fault.  The trial court denied the City's motion for a new trial.

We review a ruling on a motion for a new trial under the abuse of discretion standard.  *See Heartland Express, Inc. of Iowa v. Farber*, 230 So. 3d 146, 150 (Fla. 1st DCA 2017).  "A trial court's discretion, while broad, is not unbridled." *Ashcroft v. Calder Race Course, Inc.*, 492 So. 2d 1309, 1314 (Fla. 1986).

As an appellate court, we do not reweigh the evidence.  Rather, weighing the evidence is for the trial court.  "In deciding whether the evidence manifestly weighs against the verdict, the trial court must examine all of the evidence—giving consideration to its weight and credibility." *Meyers v. Shontz*, 251 So. 3d 992,

6

1000 (Fla. 2d DCA 2018) (citing *Van v. Schmidt*, 122 So. 3d 243, 260 (Fla. 2013), and *Smith v. Brown*, 525 So. 2d 868, 869 (Fla. 1988)); *see also Smith v. Lyles*, 364 So. 3d 1123, 1129 (Fla. 6th DCA 2023) (citing *Meyers* for authority that a trial court must consider "all of the evidence" when deciding whether a verdict is contrary to the manifest weight of evidence).

"A jury's verdict is generally not against the manifest weight of the evidence if the record shows conflicting testimony from two or more witnesses." *Bachman v. Oliveros*, 293 So. 3d 555, 560 (Fla. 5th DCA 2020) (quoting *Lindon v. Dalton Hotel Corp.*, 113 So. 3d 985, 987 (Fla. 5th DCA 2013)); *see also National Healthcorp Ltd. P'ship v. Cascio*, 725 So. 2d 1190, 1194 (Fla. 2d DCA 1998). For a verdict to be against the manifest weight of the evidence to warrant a new trial, the evidence must be clear, obvious, and indisputable; where there is conflicting evidence, the weight to be given that evidence is within the province of the jury. *See Miami-Dade Cnty. v. Davis*, 307 So. 3d 883, 890 (Fla. 3d DCA 2020); *Harlan Bakeries, Inc. v. Snow*, 884 So. 2d 336, 340 (Fla. 2d DCA 2004). Here the evidence of comparative fault by both Rodgers and Blackwell was clear, obvious, and indisputable. As a result, the trial court abused its discretion in not granting a new trial based on that evidence.

One of the witnesses called by the City was Christine Raach, Ph.D., an expert in biomechanics. She testified that within a reasonable degree of certainty the spinal injury Rodgers sustained was caused by the effect of his ejection from the truck and that Rodgers would not have been ejected had he been wearing a seat belt. Had he been seat belted, despite the rollover Rodgers would have walked away from the accident with only minor injuries, Raach testified. There was no evidence disputing Raach's testimony that Rodgers would not have been so severely injured had he been wearing his seat belt. Yet the jury found no negligence on the part of Rodgers.

Similarly, the jury found no negligence on the part of Blackwell, the driver, even though the truck's airbag data revealed that he was exceeding the posted speed limit by ten miles per hour at the time of the accident. Another witness for the City, accident reconstruction expert Andrew Irwin, testified that the excessive

7

speed contributed to Blackwell's inability to avoid Stormant's vehicle and thus contributed to the accident. No evidence was offered contradicting this testimony. While Blackwell testified that he was traveling at the same speed as other drivers, such is not testimony that he was not speeding. That is, Blackwell's testimony does not conflict with Irwin's.

In denying the City's motion for a new trial, the trial court found that "there was sufficient evidence presented to support the jury's finding" that Stormant was a hundred percent liable for this accident. The trial court identified that evidence as being: "Stormant's testimony that he ran the stop sign and that he was responsible for the accident; Mr. Blackwell's testimony that he was driving at the same rate of speed as traffic; and testimony that Mr. Blackwell was not injured and that he was also not wearing his seatbelt."

These findings do not consider the undisputed testimony of Raach and Irwin. Further, while Stormant laudably acknowledged fault, such is hardly evidence that he was the sole cause of Rodgers' catastrophic injury. Further still, as noted, traveling at the same rate of speed as others is not a denial of speeding. As for the lack of serious injury sustained by Blackwell, he was not seated on the side of the vehicle struck by Stormant and was not in the back seat. Thus, Blackwell experienced the dynamics of the accident differently. As a result, we hold that the trial court did not "examine all of the evidence—giving consideration to its weight and credibility." *Meyers*, 251 So. 3d at 1000. Accordingly, the trial court abused its discretion in denying a new trial.

Adding to the problem was the trial court's refusal to give a curative instruction during closing arguments. Prior to closing arguments, counsel for Rodgers stated that he intended to argue to the jury that no law requires a backseat passenger to utilize a seat belt. The City opposed such an argument. The trial court agreed such an argument was inappropriate and ordered that neither side was permitted to "mention the law regarding seatbelts." The parties could only argue that the court's jury "instructions are all of the law that applies to the case." During his closing, counsel for Rodgers addressed the testimony of Irwin

8

and the claim of the City that the excessive speed and failure to wear a seat belt were contributing factors. Counsel argued in part:

> Mr. Stormant says no, it's on me. That's their employee. And there's the instruction, they're [i.e., the City is] responsible, legally responsible for his actions. He came here under oath uncomfortably, feeling horrible about this but said, I can't blame anybody else. It's all on me.
>
> The lawyers want to say something different. . . . Use your common sense when you apply these laws that you're required to apply to this case. They want to blame him for his injuries. Oh, it's all his fault.
>
> Well, let's talk about what reasonably prudent people do. We talked about it on Monday. We talked about some people getting into Ubers and they don't wear them in the backseat. Some people in the backseat don't put on seatbelts, period. That's just what their experience is.
>
> You heard what Mr. Rodgers said in addition to saying, well, the windshield, didn't want to go through the windshield. He also said it's because he knows he's required by law to wear a seatbelt in the front seat. Go read through these instructions. This is the law in the case. And find one thing that he violated, one thing that he violated by being in the backseat without it.

Given counsel's implication that Rodgers did nothing wrong because he did not violate a statute, the City moved for a mistrial, and alternatively, sought a curative instruction at the end of Rodgers' closing argument. The trial court denied both. The jury, though, appears to have been confused about the legal significance of Rodgers' failure to use a seat belt as evidenced by the questions submitted during its deliberations.[1]  This confusion likely

---

[1] This confusion is to some extent understandable. If Stormant had not run the stop sign, there would have been no accident. But comparative fault considers the allocation of fault

9

contributed to the jury's failure to consider the unrebutted evidence about the consequences of Rodgers' failure to wear a seat belt and therefore to its verdict which was against the manifest weight of the evidence.

## *Remedy*

At oral argument both parties assumed that if we reversed on the manifest weight of the evidence issue, we would order a new trial on all issues — liability as well as damages. Our remand can be more limited, however.

In *Botta v. Florida Power and Light Company*, the court affirmed an order granting a new trial because the jury finding no comparative negligence on the part of the plaintiff Botta was against the manifest weight of the evidence. 197 So. 3d 1222, 1224 (Fla. 4th DCA 2016). As here, there was no claim in *Botta* that finding the tortfeasor liable was against the manifest weight of the evidence. In *Botta*, the amount of damages awarded was not argued to be against the manifest weight of the evidence, while here any issue the City had with the amount of damages being against the manifest weight of the evidence was resolved with the order granting remittitur and Rodgers' acceptance of a remitted judgment.

So in *Botta* the court ordered "the new trial should be only on the issue found to have been erroneous," which was the comparative negligence of Botta. *Id.* at 1226; *see also Griefer v. DiPietro*, 625 So. 2d 1226, 1229 (Fla. 4th DCA 1993), *as modified on denial of reh'g* (Sept. 8, 1993) ("[W]e now hold that a reversal for a new trial on damages is not appropriate where the error complained of affects only the issues of liability"). A similar order is appropriate here. *See also Ridley v. Safety Kleen Corp.*, 693 So. 2d 934, 945 (Fla. 1996), *as clarified on reh'g* (Mar. 27, 1997) (limiting retrial "to the issue of the alleged comparative negligence of [plaintiff] in failing to wear a seat belt, and if he is found to be

---

for the damages a plaintiff suffers. *See Ridley v. Safety Kleen Corp.*, 693 So. 2d 934, 944 (Fla. 1996).

comparatively negligent, the issue of the percentage of fault attributable to [plaintiff]").

As the court in *Botta* did, we adopt the procedure from *Shufflebarger v. Galloway*, 668 So. 2d 996 (Fla. 3d DCA 1995) (en banc), as well as the procedure from *Ridley*. On remand, the jury is to be instructed that Stormant was negligent and the City is liable for Stormant's actions. Testimony and evidence can be received on the actions of Stormant, Rodgers, and Blackwell to allow the jury to apportion fault appropriately.[2]

We, therefore, AFFIRM the trial court's holding that law of the case precluded the City from reasserting the issue of sovereign immunity. We REVERSE and REMAND for a new trial solely as it relates to Stormant's negligence, and Rodgers' and Blackwell's negligence, if any, recognizing that Stormant has already been found to be negligent and the amount of damages have already been determined.

ROBERTS and M.K. THOMAS, JJ., concur.

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

Stacy D. Blank, Bradford D. Kimbro, Joseph H. Varner, III, Anne L. Kelley of Holland & Knight LLP, Tampa, for Appellant.

Brian J. Lee of Morgan & Morgan, Jacksonville, for Appellee.

---

[2] We are not directing that fault must be apportioned to Rodgers or Blackwell because we do not know what evidence will be presented at trial on remand.